**R & R ASSOCIATES et al.**

v.

**CITY OF PROVIDENCE WATER SUPPLY BOARD et al.**

v.

**State of Rhode Island et al.**

No. 97–289–Appeal.

Supreme Court of Rhode Island.

Jan. 15, 1999.

Robert D. Wieck, Bruce R. Ruttenberg, Kenneth P. Borden, Providence, for plaintiff.

Ronald W. Delsesto, Seth Handy, Providence, Joseph J. McGair, Warick, James P. Maruska, Catherine A. Sammartino, Providence, Malcolm Farmer, III, Stephen A. Rodio, Laura A. Pisaturo, Brent Canning, William Conley, Jr., Peter J. Cerilli, William E. Smith, Providence, Jon Mason Anderson, Ralph E. Iannitelli, Greenville, Stephen E. Cicilline, Thomas H. Quinn, Jr., Providence, Rebecca Tedford Partington, Milan Azar, Edmund L. Alves, Jr., Providence, Nicholas Gorham, Providence, Mark P. Welch, Pawtucket, Anthony M. Gallone, Jr., Michael A. Ursillo, Providence, Bruce E. Vealey, Cranston, Anthony DeSisto, Providence, for defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

WEISBERGER, Chief Justice.

This case comes before us on the appeal of the City of Providence and the Providence Water Supply Board (Providence) from summary judgment entered in the Superior Court in favor of third-party defendant municipalities and water districts.[1] For the reasons that follow, we affirm the judgment of the Superior Court. The travel and facts of the case as pertinent to this appeal are as follows.

This case originated with the construction of the Scituate Reservoir. In the late 1800's, the City of Providence became increasingly dissatisfied with its water supply from the Pawtuxet River at Pettaconsett, a location three-quarters of a mile from the junction of the Pawtuxet and Pocasset Rivers. *The Providence Waterworks: 1869–1969* at 10 (unpublished manuscript). Increased population along the Pawtuxet Valley led to greater pollution and the diminished quality of the city water supply. *See Pawtuxet Filth— Alarming Pollution of the City Water Supply—The Valley Villages Use the River as a Public Sewer—Commissioner Smith*

*Aroused to Earnest Action,* Providence Journal, Jan. 22, 1892, at 8. Additionally, by 1911, Providence's consumption of water during the summer exceeded the flow of the river. *The Providence Waterworks: 1869–1969* at 18. To ameliorate the problem, the Providence city council in 1913 appointed the Committee on Increased Water Supply to investigate and recommend "the best method of obtaining an adequate supply of pure water." *Id.* The committee eventually forwarded former City Engineer Samuel M. Gray's plan to form a reservoir in Scituate by damming the Pawtuxet River two miles below the confluence of the Ponaganset and Monswansicut Rivers. *Id.* at 18–19. The city council adopted the plan and submitted it to the state legislature, who approved it as G.L. 1915, ch. 1278, "An Act to Furnish the City of Providence with a Supply of Pure Water." *Id.* at 19–20.

The 1915 Act allowed Providence to condemn lands and water in and around the north branch of the Pawtuxet River in order to form the reservoir, G.L.1915, ch. 1278, §§ 5–6, and provided a procedure for the city to compensate the owners of the land and water rights for the city's takings. *Id.* at § 23. The Act also granted Scituate, Cranston, parts of Warwick, and certain communities along the Pawtuxet River "the right to take such water [from the reservoir owned by Providence] to any extent each month not exceeding an average per day of one hundred gallons per capita of the number of inhabitants" as fixed by the last census, and any greater quantity if consented to by Providence. *Id.* at § 18. Providence was to supply this water via connection paid for by the communities receiving water and the communities were to pay Providence "such fair wholesale rates or charges for the quantity of water taken \*\*\*." *Id.* Providence eventually condemned 12,546.88 acres of land, *The Providence Waterworks: 1869–1969* at 24, along with the water rights of downstream landowners to effect the purposes of the 1915 Act.

---

1. The third-party defendant municipalities and water districts are North Providence, Warwick, Smithfield, Johnston, East Providence, Bristol, Barrington, Warren, Lincoln, Burrillville, Kent County Water Authority, East Smithfield Water District, Greenville Water District, and Bristol County Water Authority.

In 1922, Providence contracted with Hope Company, B.B. & R. Knight, Inc., and Interlaken Mills, owners of land downstream from the reservoir, to compensate them for the city's taking of their riparian rights. Thereafter, the state legislature amended the 1915 Act to give additional communities and water districts the right to receive water from the reservoir. *See* P.L.1931, ch. 1815 (North Providence); P.L.1932, ch. 1966 (Warwick and Kent County Water Authority); P.L. 1936, ch. 2316 (Johnston, Smithfield, East Smithfield Water District and Greenville Water District); P.L.1963, ch. 158 (East Providence); P.L.1967, ch. 162 (Bristol County Water Authority, Barrington, Bristol and Warren); P.L.1984, ch. 442 (Lincoln); P.L. 1986, ch. 84 (Burrillville). The Director of Planning & Engineering for the Providence Water Supply Board, Paul Gadouny, estimates that Providence now provides approximately sixty percent of the statewide water supply.

The plaintiffs in the current litigation, R & R Associates and L & L Associates, filed their third-amended complaint against the City of Providence and the Providence Water Supply Board on January 5, 1996, alleging that they were successors in interest to the Hope Company, a party to the 1922 contract and holder of riparian rights along the Pawtuxet River. They further alleged that the City of Providence and the Providence Water Supply Board, by supplying water to communities and water districts not originally included in the 1915 Act and not contemplated by the 1922 contract, effected an uncompensated taking of their residual riparian rights and breached the 1922 contract.

In response, Providence denied the allegations and, on June 6, 1996, filed a third-party complaint to implead, as third-party defendants, the State of Rhode Island and all municipalities and water districts allowed to receive water by amendment to the 1915 Act. The city alleges that the third-party defendants owe equitable indemnification or contribution for all or part of the riparian right holders' claims against Providence.

Thereafter, the third-party defendant end-user water districts and municipalities moved alternatively for dismissal or summary judgment.[2] They asserted that no set of facts existed under which the end-user third-party defendants are liable. The trial court granted the motion for summary judgment on May 1, 1997, reasoning that since the 1915 Act gave only Providence the power to condemn, only Providence could be held liable for exercising that power. Therefore, as a matter of law, the end-user third-party defendant municipalities and water districts could not be held liable for indemnification or contribution.

 In ruling on a motion for summary judgment, both the trial justice and this Court must view the evidence in the light most favorable to the nonmoving party and may grant such a motion only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1225 (R.I. 1996). To establish equitable indemnification, "the prospective indemnitee must prove three elements. First, the party seeking indemnity must be liable to a third party. Second, the prospective indemnitor must also be liable to the third party. Third, as between the prospective indemnitee and indemnitor, the obligation ought to be discharged by the indemnitor." *Muldowney v. Weatherking Products, Inc.*, 509 A.2d 441, 443 (R.I.1986). Contribution may be had if the aggrieved party has a cause of action "against both the party seeking contribution and the party from whom contribution is sought." *Boucher v. McGovern*, 639 A.2d 1369, 1374 (R.I.1994) (quoting *Cacchillo v. H. Leach Machinery, Co.*, 111 R.I. 593, 595, 305 A.2d 541, 542 (1973)); *see also* G.L.1956 § 10–6–3. Therefore, the summary judgment motion rises and falls on whether the end-user third-party defendants possibly could be directly liable to the riparian right holders.

In passing upon the possibility that the third-party defendants might be liable under

2. The State of Rhode Island did not join this motion and the trial court specifically excluded the state from it.

a theory of indemnity or contribution to the City of Providence in the event that the city was held liable to the riparian owners, we emphasize that we express no opinion concerning the liability of the city to such riparian owners. This question has been decided by a justice of the Superior Court in favor of the City of Providence. The Superior Court judgment is subject to appeal to this Court but is not before this Court either expressly or by implication.[3] For purposes of passing upon the summary judgment in favor of the third-party defendants, we are required to assume without deciding that the City of Providence may be exposed to liability in respect to the principal plaintiff riparian owners who commenced this action against the city.

General Laws 1915, ch. 1278, makes Providence solely liable for all takings. Originally, the statute provided Cranston, Scituate, parts of Warwick, and communities within the drainage of specified areas of the Pawtuxet River with the "right to take and receive water" from the reservoir owned by Providence in return for "fair wholesale rates or charges for the quantity of water taken ***." G.L.1915, ch. 1278, § 18. Yet none of these communities were obligated to pay for any portion of the reservoir except their own connective piping. *Id.* Instead, Providence bore all costs of the reservoir including: building bridges over flooded lands for the Town of Scituate; constructing of a new Danielson Pike; reimbursing all losses of the Providence & Danielson Railway Company; paying for lost furniture, equipment, and mill machines; reimbursing the cost of moving mill machinery; moving burial grounds; reimbursing lost value to land and business; and providing six months of wages to anyone who lost employment as a result of the project. *Id.* at §§ 8–17. Most importantly, the 1915 Act not only gave sole condemnation power to Providence, but also mandated that Providence pay for all takings. *Id.* at § 23.

Later amendments to § 18 of the 1915 Act expanded the number of communities and water districts enjoying the right to receive water from Providence, *see, e.g.,* P.L.1984, ch. 442, but did not affect sections of the Act controlling liability. *See, e.g.,* G.L .1915, ch. 1278, § 23. End-users, whether originally included in the 1915 Act or subsequently added by amendment, remain liable only for the price of water, *see* P.L.1984, ch. 442, while Providence continues to bear all other costs, including those associated with the taking of water rights.

Moreover, while the 1915 Act benefited only communities suffering a partial loss of Pawtuxet River flow as a result of the reservoir, *see* G.L.1915, ch. 1278, § 18 (Scituate, Cranston, portions of Warwick, and "each other town *** in the drainage district of said north branch of said Pawtuxet river, or of the drainage district of said Pawtuxet river below the junction of the north and south branches of said river"), the later amendments allowed end-users not harmed by construction of the reservoir to receive water from Providence. *See, e.g,* P.L.1967, ch. 162 (adding Bristol County Water Authority, Barrington, Bristol, and Warren). The state legislature could have rendered the subsequently-included end-users liable for the taking of water rights for their benefit, but instead only obligated the end-users to pay fair wholesale rates for water they receive.

Providence claims to be the compelled agent of both the state and the end-user third-party defendants, acting only at their behest. Compelled agency, recognized in two jurisdictions,[4] is an agency relationship growing out of a municipality acting "at the instance of and, in some material degree, under the direction and control of the State

---

3. A justice of the Superior Court decided this case on November 13, 1998. *See R & R Associates v. City of Providence,* C.A. 94–571. The decision directed counsel to submit an appropriate judgment for entry. As of the time of issuance of this opinion, judgment has not entered.

4. Providence also cites *Harrison v. Louisiana Highway Commission,* 191 La. 839, 186 So. 354, 356 (La.1939); *Hamilton v. Conservation Commission of Orleans,* 12 Mass.App.Ct. 359, 425 N.E.2d 358, 364–66 (Mass.1981), and *Austin v. Hennepin County,* 130 Minn. 359, 153 N.W. 738, 740 (Minn.1915), to support its compelled agency claim. These cases, however, stand for the unremarkable proposition that one government entity cannot be held liable for the direct actions of another government entity.

**436**

\*\*\*. \*\*\* As the principal of an agent acting within its authority, the State must take full responsibility if a taking occurred." *Orion Corp. v. State,* 109 Wash.2d 621, 747 P.2d 1062, 1074 (Wash.1987); *see also Boland v. City of Rapid City,* 315 N.W.2d 496, 499 (S.D.1982).

■ The 1915 Act and amendments mandate that Providence supply water to end-users upon request. *E.g.,* G.L.1915, ch. 1278, § 18. Providence has no ability to refuse. Thus, Providence argues, the end-user third-party defendants are statutorily empowered to effect an inverse condemnation of water rights through their agent, the Providence Water Supply Board, and therefore should be liable for such action.[5] Providence's argument fails because the 1915 Act makes clear that Providence is solely liable for takings, even when done for the benefit of end-user communities and water districts. *See* G.L.1915, ch. 1278, § 23.

■ The riparian right holders also ground their claim in breach of contract. As the end-user third-party defendants were not parties to the contract and have never evinced an intent to be bound by the contract, they cannot be held liable under the contract's terms. *See Rhode Island Five v. Medical Associates of Bristol County, Inc.,* 668 A.2d 1250, 1253 (R.I.1996).

■ Thus, because the end-user municipalities and water districts are not liable to the riparian right holders, Providence may not seek indemnification or contribution from these third-party defendants. Although our holdings herein vary from that of the trial court, a Superior Court grant of summary judgment may be upheld upon other grounds. *E.g., Brindamour v. City of Warwick,* 697 A.2d 1075, 1077 (R.I.1997); *Thibodeau v. Metropolitan Property and Liability Insurance Co.,* 682 A.2d 474, 475 (R.I.1996). Consequently, for the foregoing reasons, the

appeal is denied and we affirm the grant of summary judgment in favor of the third-party defendants. The papers in the case are remanded to the Superior Court for further proceedings.

---

5. Providence mislabels this taking an inverse condemnation. An inverse condemnation is "[g]overnmental action short of actual acquisition \*\*\* [which] deprives the property owner of all or most of his interest in the subject matter." *Brunelle v. Town of South Kingstown,* 700 A.2d 1075, 1082 (R.I.1997) (quoting *E & J Inc. v. Redevelopment Agency of Woonsocket,* 122 R.I. 288, 290, 405 A.2d 1187, 1189 (1979)). A paradigmatic inverse condemnation is a regulatory taking, where regulation is so onerous as to deprive the owner of most or all of the beneficial use of his or her property. *See Mesolella v. City of Providence,* 508 A.2d 661 (R.I.1986). In the instant case, the riparian right holders complain about actual acquisition of their water rights, not regulatory diminution. Therefore, inverse condemnation is not applicable in this context.