**Alan J. ROOT et al.**

v.

**PROVIDENCE WATER SUPPLY BOARD et al.**

**Nos. 2001–499–Appeal, 2003–370–Appeal.**

Supreme Court of Rhode Island.

June 10, 2004.

Elizabeth McDonough Noonan, Esq., Providence, for Plaintiff.

Caroline Cole Cornwell, Esq. (for city), Michael J. Gardiner, Esq. (for water Supply), Warwick, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, and SUTTELL, JJ.

## OPINION

FLANDERS, Justice.

A public entity used the power of eminent domain to take private property for public use. In doing so, however, it apparently failed to personally notify some of the property's easement owners about the taking. It also failed to pay just compensation to them for extinguishing their easements. Eventually, the easement owners discovered the taking and the identity of the public entity that took it. But fearful that they apparently were out of time to sue the condemning authority, they instead sued other public entities that now own or use their former easements. The trial justice treated these other public entities as if they were the condemning authorities. Consequently, he ordered them to pay the plaintiffs just compensation for taking their easements. On appeal, we now reverse and vacate the judgment, holding that the former easement owners sued the wrong parties, that the plaintiffs possessed an adequate legal remedy against the con-

demning authority to obtain just compensation for the taking, and that their failure to pursue that remedy within the period provided by law for doing so did not enable them to sue these defendants.

## Facts and Travel

The defendants, Providence Water Supply Board (water board) and Stephen Napolitano, in his official capacity as the Treasurer of the City of Providence (city), appeal from Superior Court judgments in favor of plaintiffs, former easement owners Alan Root, Susan Root, Stephen Moscicki, and Sandra Moscicki. At all times pertinent to this case, the Roots and the Moscickis owned real estate that abutted Field Hill Road in the Town of Scituate (town). Until 1991, both the Roots and the Moscickis also owned deeded easements to use a portion of Field Hill Road to gain access to their properties. These easements passed over a certain large tract of real estate in the town known as the Joslin Farm.

In 1990, pursuant to G.L.1956 § 45–50–13(a)(2), (b), the Providence Public Building Authority (PPBA) condemned the Joslin Farm property, including the easements in question. The PPBA enacted a resolution declaring the necessity of using eminent domain to acquire the Joslin Farm. Thereafter, on December 27, 1991, it filed a copy of the resolution, along with the plat of the Joslin Farm, in the Scituate land-evidence records. Because the details of this condemnation process are set out in the case of *Gorham v. Public Building Authority of Providence*, 612 A.2d 708, 709–11 (R.I.1992), we will not recapitulate them here. Suffice it to say that, after the PPBA acquired the Joslin Farm in 1991,

including the easements in question, by exercising its power of eminent domain, the trial justice found that, "it deeded or conveyed the property * * * to the Providence Water Supply Board" to use it for water-resource and conservation purposes.[1]

Although the travel of this case is tortuous, we shall recap only a selected portion of the procedural history, as needed to decide this case. In October 1995, plaintiffs sued the water board, seeking injunctive relief that would prevent it from blocking their access to Field Hill Road. In its answer, the water board denied that plaintiffs owned the easements in question. On the contrary, it asserted that it had the authority to prevent plaintiffs from obtaining access to their properties via Field Hill Road. In 1997, plaintiffs amended their complaint, alleging for the first time that the water board had taken their property without just compensation, that the taking had denied plaintiffs their substantive and procedural due-process rights under the United States and Rhode Island Constitutions, and that the water board's taking of their easements had enriched it unjustly. For the first time, plaintiffs requested monetary damages from the water board. In answer to plaintiffs' first amended complaint, the water board asserted as affirmative defenses that plaintiffs had failed to join an indispensable party, and that they had failed to comply with the procedures for suing the PPBA to obtain just compensation for the taking of their easements. *See* § 45–50–13(e) (providing a right of action for damages to property owners whose interest the PPBA took without personally notifying them, allowing such owners to petition the Superior Court

---

1. The water board argued to the trial justice that "all of the assets in the property * * * [of] the Providence Water Supply Board[ ], are owned by the City of Providence." The record, however, is unclear about which entity—the water board or the city—actually acquired title to the property from the PPBA.

within one year from the first publication of the taking). The water board also asserted that plaintiffs had received actual notice of the PPBA's condemnation of their easements.

On August 15, 2001, a Superior Court motion justice denied the water board's request for summary judgment. The water board argued that plaintiffs failed to pursue their statutory remedy to obtain damages from the PPBA for its condemnation of their property, as set forth in § 45–50–13(e). The case then proceeded to trial and, on September 27, 2001, the trial justice awarded plaintiffs damages, representing 10 percent of the value of their properties, plus interest.[2] The water board appealed from that judgment to this Court.

In February 2002, after a hearing, the Superior Court entered an order allowing executions on the judgment to issue against the water board. It then stayed these executions pending the water board's appeal, but conditioned the stay upon the water board's posting a supersedeas bond or segregating sufficient money to satisfy the judgment. The water board also appealed from these orders and, on February 8, 2002, this Court entered an order staying the executions and remanding the case to the Superior Court to determine various issues.

After yet another hearing before the trial justice, the Superior Court issued an order on May 14, 2002, denying the water board's motion to vacate the judgment and to stay the executions. The court found that the water board had waived the defenses of failure to join an indispensable party and of lack of capacity to be sued. Thus, it allowed plaintiffs leave to file motions to add the city or the PPBA as parties to the case. On June 21, 2002, the court granted plaintiffs' motion to amend their complaint, which added only the city as an additional defendant. The water board then appealed both of these orders to this Court.

In 2002, we issued several orders: we stayed the executions that the Superior Court had authorized; we denied plaintiffs' request for the water board to post a supersedeas bond; and we granted plaintiffs' motion to remand the case for a hearing on plaintiffs' motion for judgment on the pleadings, or alternatively, the motion for summary judgment against the city. After a hearing, the trial justice, in April 2003, entered summary judgment for plaintiffs against the city. The city appealed from this entry of final judgment against it.[3]

On appeal, the water board contends that plaintiffs received actual notice of the PPBA's 1991 taking of their property via eminent domain, yet they failed to file a claim against the PPBA within the one-year statute of limitations for doing so, as provided in § 45–50–13(e). Also, the water board argues that the trial justice erred in accepting the testimony of plaintiffs' expert about the alleged diminution in the value of plaintiffs' property because of the taking, contending that the expert did not state the facts upon which he based a portion of his estimate. The water board next asserts that the trial justice erred in allowing executions to be issued against it, because, as a municipal entity, it

---

2. The court awarded the Roots $19,500, plus interest worth $25,105.31, for a total amount of $44,605.31, and the Moscickis $19,850, plus interest worth $25,555.92, for a total amount of $45,405.92.

3. On March 16, 2004, this Court consolidated the water board's various appeals, docketed as No.2001–499–A, and the city's appeal from the entry of summary judgment against it, docketed as No.2003–370–A.

was not subject to such executions. Lastly, the water board contends that the judgments against it are void because plaintiffs failed to join the PPBA as an indispensable party and because the water board lacked the capacity to sue or be sued. It also urges us to reverse the judgment against the city because plaintiffs failed to notify the city council, pursuant to G.L. 1956 § 45–15–5, of their claim against the city for damages.

The city contends that it was improperly joined as a defendant, under Rule 15(c) of the Superior Court Rules of Civil Procedure, after the trial already was over. It further suggests that plaintiffs failed to properly notify the city about the suit in accordance with the notice provisions of § 45–15–5. Additionally, the city asserts that the doctrine of sovereign immunity precludes any award of post-or pre-judgment interest against it. Lastly, the city suggests that the summary judgment against the water board does not preclude it from opposing the summary-judgment motion against the city because the doctrines of collateral estoppel and *stare decisis* do not apply in this situation, and because these doctrines only apply to issues arising in later cases, but not to later-filed motions within the same case.

The plaintiffs counter that the water board does have the capacity to be sued in its own name, but that it waived that defense when it failed to raise it before the court entered judgment against it. They also contend that the one-year statute of limitations in § 45–50–13(e) does not bar their claims because they never received personal notice of the condemnation from the PPBA. Thus, they say, no cause of action ever arose against the PPBA. In addition, plaintiffs maintain that the trial justice did not err in crediting the testimony of their expert about the valuation of their property when the taking occurred.

They also insist that the executions against the water board were not improper. Responding to the city's appeal, plaintiffs argue that the trial justice did not err by allowing them to amend their complaint to add the city as a defendant. Nor did the court err, they suggest, by allowing that amendment, pursuant to Rule 15(c), to relate back to the filing of the original complaint. The trial justice was also correct, they posit, in ruling that notice to the city pursuant to § 45–15–5 was not required because the city was exercising a proprietary function when it acquired the Joslin Farm. Lastly, plaintiffs urge that the city waived its defense of lack of notice because the water board, as a city agency, should have raised this defense in its first answer and that the doctrines of collateral estoppel and *stare decisis* preclude the city from challenging the entry of judgment against it.

Our analysis of these points, as pertinent to our disposition of these appeals, is set forth below.

## Analysis

### I

### The PPBA—But Not the City or the Providence Water Supply Board—Took Plaintiffs' Easements Without Personally Notifying Them or Paying Them Just Compensation

The Municipal Public Buildings Authorities Law, chapter 50 of title 45, created in each city and town, a municipal public building authority, including the PPBA in Providence. Section 45–50–2. Its purpose was to afford each municipality an alternate financing and administrative mechanism to proceed with certain types of public-building projects. Section 45–50–3. Pursuant to § 45–50–3(c), the authority in each city or town may transact business when the city or town council resolves that it has a need for the authority to function.

The Public Finance Management Board of the State of Rhode Island then authorizes the creation of such authorities. *Id.* Among the powers that the Legislature granted to a public building authority is the power to acquire, by eminent domain, either the development rights or fee simple title to certain properties. Section 45–50–13. Specifically, § 45–50–13(a)(2) provides:

> "In addition to the powers previously granted, any authority in existence on July 7, 1989 has the power to acquire by exercise of eminent domain the land, or any interest in it, described as that certain land situated in the town of Scituate delineated as Scituate tax assessor's lots 45, 48, 49, 60, 61, 62, and 63, plat 51 consisting of 542.11 acres, more or less, and commonly known as the 'Joslin Farm' for the purpose of protecting the water supply."

The PPBA existed as of July 7, 1989. *See Gorham,* 612 A.2d at 709. Thus, by the enactment referred to above, the General Assembly empowered the PPBA to take the property known as the Joslin Farm, including plaintiffs' easements, by eminent domain. In creating the public building authorities, the Legislature chose to give these entities a legal existence apart from the city or town in which a particular authority operates. Section 45–50–2. Thus, § 45–50–2 provides, "the municipal public buildings authority of the municipality * * * is an instrumentality and agency of the city or town, but has a distinct legal existence from the city or town."

In 1988, the Public Finance Management Board authorized the PPBA to begin functioning as a public building authority. *Gorham,* 612 A.2d at 709. In accordance with the legislation cited above, the General Assembly authorized the PPBA to acquire the Joslin Farm, over which plaintiffs' easements ran. Section 45–50–13(a)(2). Section 45–50–13(a)(2) did not authorize the city or the water board to take the Joslin Farm property through the power of eminent domain; rather, the General Assembly authorized a public building authority, in this case the PPBA, to do so, endowing it with a "distinct legal existence from the city," § 45–50–2, and with the power to condemn the property and to pay damages to the affected property owners for any such taking. More importantly, the PPBA actually exercised this eminent-domain authority when it condemned the Joslin Farm (including the plaintiffs' easements) on January 4, 1991. *Gorham,* 612 A.2d at 710. Thereafter, the PPBA "deeded or conveyed" the property to the city or the water board so that the water board could use that property to help conserve the city's water supply.

In *R & R Associates v. City of Providence Water Supply Board,* 724 A.2d 432, 434 (R.I.1999), the plaintiffs asserted that the city had taken their riparian rights without paying just compensation. In response, the city attempted to implead, as third-party defendants, the State of Rhode Island and several municipalities in the plaintiffs' action against the city for damages. *Id.* In that case, the General Assembly had empowered the city to condemn lands in and around the mouth of the Pawtuxet River to create a reservoir. *Id.* at 433. The statute vesting the city with the power to take the property provided, in pertinent part: "[The] city of Providence is hereby authorized from time to time and in the manner hereinafter provided to acquire by condemnation any lands" that the Legislature designated as available to the city for this purpose. 1915 R.I. Acts & Resolves ch. 1278, § 5. The statute further provided a remedy for those who could not agree with the city about the valuation of their property, as follows:

"Any owner of, or person entitled to or interested in, any such land or lands * * * who shall not agree with said city of Providence upon the price of his land or lands * * * may within one year after personal notice of said taking, or if he have no personal notice may within two years from the date of such filing of such statement and plat or statement apply by petition, to the superior court * * * setting forth the taking of his land or lands * * * and praying for an assessment of damages by a jury." 1915 R.I. Acts & Resolves ch. 1278, § 23. This Court held that under this statute, "Providence is solely liable for [these] takings," and, therefore, it could not implead the communities who also received water from the reservoir as potentially responsible parties. *R & R Associates*, 724 A.2d at 436.

The language used in chapter 50 of title 45 is similar to that used in 1915 R.I. Acts & Resolves ch. 1278. Both statutes authorized a government entity to use the power of eminent domain to take certain designated property. Thereafter, without specifically designating whom a party must name in its petition for damages, the statutes authorize an aggrieved party to file a petition in court to obtain damages for such taking. The Court in *R & R Associates*, 724 A.2d at 436, interpreted this language to mean that the entity that took the property via condemnation should be "solely liable for [the] taking[ ]."

■ Here, the language of § 45–50–13(e) shows that the General Assembly authorized the PPBA to take the Joslin Farm, including plaintiffs' easements, by eminent domain. The PPBA did so in 1991, albeit without personally notifying plaintiffs as it was required to do. In accordance with the reasoning of this Court in *R & R Associates*, however, the PPBA was solely liable for any damages

that plaintiffs incurred because of that taking. By failing to bring a timely suit against the PPBA pursuant to § 45–50–13(e), and by naming only the water board and the city as defendants, plaintiffs sued the wrong parties because these defendants did not take their property without paying just compensation. Rather, the PPBA did so, and the General Assembly expressly provided plaintiffs with a remedy to redress the PPBA's taking of their private property without providing them with personal notice, as the legislation required, and without paying just compensation.

## II

### The Trial Justice Committed Reversible Error by Not Ruling That Plaintiffs Had Failed to Add an Indispensable Party, the PPBA, to the Action

■ Rule 19(a) of the Superior Court Rules of Civil Procedure provides that certain persons must be joined in an action for that case to proceed to judgment. Specifically, Rule 19(a) provides, in pertinent part, that "[a] person who is subject to service of process shall be joined as a party in the action if * * * in the person's absence complete relief cannot be accorded among those already parties." This Court has defined an indispensable party as one "whose interests could not be excluded from the terms or consequences of the judgment * * * as where the interests of the absent party are inextricably tied in to the cause * * * *or where the relief really is sought against the absent party alone.*" *Anderson v. Anderson*, 109 R.I. 204, 215, 283 A.2d 265, 271 (1971) (quoting *Stevens v. Loomis*, 334 F.2d 775, 777 (1st Cir. 1964)). (Emphasis added.) When faced with a claim that a litigant has failed to join an indispensable party, a trial justice, whenever possible, should avoid dismissing the complaint; but, in any event, he or she

must examine the case to determine whether it can proceed to judgment without adding the party in question. *Anderson*, 109 R.I. at 215–16, 283 A.2d at 271.

In its answer to plaintiffs' first amended complaint, the water board affirmatively raised the defenses of plaintiffs' failure to join an indispensable party and of their failure to comply with the petition-for-damages procedure set forth in § 45–50–13(e).[4] Additionally, in August 1997, to support its motion for summary judgment, the water board argued to the motion justice that the PPBA was the public authority that actually condemned plaintiffs' easements and that plaintiffs had failed to comply with the one-year statute of limitations for bringing a claim against the PPBA, as provided in § 45–50–13(e). The water board appended to its memorandum of law the document that the PPBA filed in the Scituate land-evidence records, which clearly indicated that the PPBA was the condemning authority.

The trial justice, however, failed to consider whether the PPBA was an indispensable party to this action and whether the water board and the city were properly sued as defendants. During the trial in September 2001, the trial justice lumped the PPBA and the water board together, considering them as the joint condemning authority. The trial justice specifically found as fact that "the Providence Public Building Authority, and more specifically [t]he Providence Water Supply Board, acquired [the] property * * * through the act of condemnation." Factually, this was incorrect. Only the PPBA acquired the

easements in question through condemnation. Oddly enough, during the same hearing, the trial justice later acknowledged that "the Providence Public Building Authority deeded or conveyed the property * * * to the Providence Water Supply Board." Although these two statements seemingly were inconsistent, the trial justice failed to explain why or how he decided that the water board was liable for the actions of the PPBA because it, too, had acted as the condemning authority.

The trial justice's comments in response to the city's argument when it moved for summary judgment in March 2003 provide further evidence that the trial justice failed to consider whether the water board and the city were proper defendants in this case. The trial justice said: "The question * * * is whether or not when the property was acquired, [were] the people who had recorded deeds that provided a right to travel over [the property] * * * compensated for * * * the taking of their property by whomever took the property." And in response to the city's argument that it was not the condemning authority and, therefore, that it was not responsible to compensate plaintiffs for the taking, the trial justice replied, "would [it] be justice to deny the plaintiffs a remedy?"

Thus, the trial justice failed to properly consider whether the water board, the city, or some other entity was the proper party defendant to be sued for condemnation damages. Indeed, although the water board raised this issue in its answer, the motion justice never ruled on whether the PPBA was an indispensable party to the

---

4. It is important to note that plaintiffs filed their original complaint in 1995, seeking only injunctive relief against the water board for blocking access across their former easements. In 1997, however, plaintiffs amended their complaint to add claims against the water board for monetary damages, alleging that the water board took their property by eminent domain, without paying just compensation. Thus, it was appropriate for the water board to raise the affirmative defenses of failure to join an indispensable party and failure to comply with G.L.1956 § 45–50–13(e) at that time.

litigation. Moreover, contrary to the trial justice's ultimate finding, the water board did not acquire the property "through the act of condemnation"; rather, the water board acquired use of the property through a transfer of the deed from the PPBA, the condemning authority, to either the city or the water board. Indeed, neither the water board nor the city could have acquired the property through condemnation or through the exercise of eminent domain because the General Assembly did not vest them with the power to do so. Pursuant to § 45–50–13(e), only the PPBA—but not the city or the water board—possessed the power to condemn the Joslin Farm property via eminent domain, and, as a factual matter, only the PPBA did so. Thus, because the relief plaintiffs were seeking was "really * * * sought against the absent party alone," *Anderson*, 109 R.I. at 215, 283 A.2d at 271, the trial justice erred in failing to rule that the PPBA was an indispensable party to the litigation. It clearly was, we hold, because it alone was the party responsible for failing to notify plaintiffs (as per the statute) that it had taken their property for public use, and for failing to pay just compensation to them for that taking.

### III

### Plaintiffs Possessed an Adequate Remedy at Law, Which They Failed to Pursue

■ Contrary to the trial justice's comments, plaintiffs possessed an adequate remedy at law to obtain just compensation for the PPBA's taking of their easements. The General Assembly expressly set forth that remedy in § 45–50–13(e), which provides:

"Any owner of or person entitled to any estate in or interested in any part of the land, or interest in it, taken, who cannot agree with the authority for the price of the land, or interest in it, taken, in which he or she is interested, may, within three (3) months after personal notice of the taking, *or, if he or she has no personal notice, within one year from the first publication of the copy of the resolution and statement, apply, by petition, to the superior court * * ** setting forth the taking of his or her land or interest in it, and praying for an assessment of damages by a jury." (Emphasis added.)

The plaintiffs argue that because they never received adequate personal notice from the PPBA of the condemnation proceedings, their claims against the PPBA "never accrued." But this argument ignores the statutory language emphasized above, providing for a one-year period for persons who have "no personal notice" to petition the Superior Court for "an assessment of damages." Also, if this argument had any merit, then plaintiffs should have presented and argued it in a lawsuit against the PPBA, not in an action against other defendants who were not the parties responsible for the taking. The alleged nonaccrual or tolling of a statute of limitations against the culpable party does not provide a *casus belli* for the aggrieved party to sue others for the alleged wrongdoing.

Section 45–50–13(d) provides:

"After the filing of the copy, plat, and statement, notice of the taking of the land, or interest in it, shall be served upon the owners of, and persons having an estate in and interested in the land * * * leaving a true and attested copy of the description and statement with each of the persons personally, or at their last and usual place of abode in this state with some person living there * * * and after the filing of the resolution, plat, and statement, the secretary of the authority shall cause a copy of the resolution and statement to be published

in some newspaper published or having general circulation in the county where the land * * * may be located."

Thus, § 45–50–13(d) required the PPBA to provide personal service and notice to interested parties, such as these plaintiffs, of any taking of their easements and to publish a copy of the taking resolution and statement in a newspaper having general circulation in the county where the affected land was located.

Section 45–50–13(e) contemplates two situations in which an "owner of or person entitled to any estate in or interested in any part of the land" may bring a claim against the condemnor of the property. First, if such a person has received personal notice of the taking, he or she must file a petition in the Superior Court "setting forth the taking" and "praying for an assessment of damages by a jury" within three months of receiving such notice. *Id.* But if such an owner has failed to receive personal notice of the condemnation, then he or she still must file a petition with the Superior Court, but must do so "within one year from the first publication of the copy of the [condemnation] resolution and statement." *Id.* It is undisputed that, in this case, plaintiffs failed to file any petition seeking damages against the PPBA within either of the above-specified periods.

Although § 45–50–13(d) requires that the PPBA provide personal notice to parties who have an interest in the land to be condemned, § 45–50–13(e) contemplates that if such personal notice does not occur, then suit must be brought within one year from the publication of the PPBA's condemnation resolution. Therefore, the latter section provides a safe-harbor to protect those property owners, such as these plaintiffs, who have an interest in the property condemned but who nevertheless did not receive personal notice from the condemning authority. If, as plaintiffs

aver, they never received personal notice from the PPBA of the Joslin Farm condemnation under § 45–50–13(d), then they fell into the second group of potential claimants who were entitled to file a petition within one year of the PPBA publication of the condemnation resolution and statement.

In *Smith v. Tripp,* 14 R.I. 112 (1883), this Court faced a similar issue. There, the Court held that a plaintiff who alleged a taking without just compensation must file suit for damages pursuant to the statutory remedy, if any, that the General Assembly has provided to contest the taking and/or the amount of damages that are due from the condemning authority. *Id.* at 114–15. In that case, An Act for Supplying the City of Providence with Pure Water, 1866 R.I. Acts & Resolves § 4(act) vested the city with the power to take the plaintiff's property. The act provided a remedy whereby an individual who could not agree with the city on a price for his or her property could "within * * * one year, from the time of such taking, apply by petition to the Supreme Court" for a determination and an award of damages. *Id.* This Court held that, when the General Assembly creates a new statutory right or liability, such as it did in the act, and provides for a specific remedy for any violations of that right, a party aggrieved by the exercise of that newly created right is bound to follow the statutorily specified remedy. *See Smith,* 14 R.I. at 114–15.

Like the statute in *Smith,* § 45–50–13(a)(2) created a new right in a public building authority to take private property by eminent domain. Also, like the statute in *Smith,* § 45–50–13(e) provided a specific remedy to those allegedly aggrieved by the PPBA's exercise of that right. The plaintiffs concede that the PPBA was the condemning authority that took their easements pursuant to § 45–50–13(a)(2). They

also concede that they did not file a petition against the PPBA within the one-year period prescribed by § 45–50–13(e) because they feared that when they were ready to do so, their claim might be time-barred by that statute of limitations. The plaintiffs point out that although the statute required the PPBA to give them personal notice of the condemnation, it failed to do so. But to the extent plaintiffs suggest that "no statute of limitations bars the constitutional right of every property owner to obtain just compensation for the government's taking of the owner's property[,] * * * this argument garners no support from the relevant cases." *Reitsma v. Pascoag Reservoir & Dam, LLC.*, 774 A.2d 826, 838 (R.I.2001). In any event, applying the plain language of § 45–50–13(d), plaintiffs' contention that they failed to receive the requisite personal notice—and that, therefore, the one-year period to file a damages lawsuit never began to run against plaintiffs—had to be asserted against the PPBA, not the water board or the city, because the only entity that § 45–50–13(d) authorized to take the Joslin Farm and to provide notice to the property owners or parties who held an interest in the Joslin Farm property was the PPBA, the actual condemning authority.

Therefore, because the plaintiffs feared that the one-year provision in § 45–50–13(e) may have precluded their claims against the PPBA, they attempted to sue the water board and the city, in their capacities as the current user and owner, respectively, of their former easements. But they sought to obtain damages for an act of condemnation that neither the water board nor the city committed, nor possessed the authority to commit. Thus, awarding damages against such governmental entities constituted reversible error.

## Conclusion

For these reasons, we reverse, vacate the Superior Court's judgment in favor of the plaintiffs, and remand this case for the entry of judgment in favor of the water board and the city.

Justice FLAHERTY did not participate.