DECISION
Before this Court is an appeal from a January 21, 2005 decision by the East Providence Zoning Board of Review (the Board), granting a request from Daniel J. Zollo (Mr. Zollo) for a dimensional variance.[1] Directly abutting landowners, John Medina and Isaltina C. Medina, are the Appellants in this matter. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 Facts and Travel
The property at issue is located at 173 Grosvenor Avenue in East Providence, otherwise known as Lots 17 and 18 on Tax Assessor's Map 206, Block 20 and is in an R-6 zoning district.[2] See Attached Sheet to Dimensional VarianceApplication. The property is legally nonconforming both by use and by dimension. Id. Located on the property is a four-stall commercial accessory structure garage. Id. The lot is almost entirely paved. Id. The record indicates that the existing building was constructed some eighty years ago and pre-dates the Ordinance. Hearing Transcript (Tr.) dated January 5, 2005, at 14 and 21. The building is currently nonconforming as to dimension because it "is located approximately 7¼ inches from the rear lot line" as opposed to the twenty-foot setback requirement contained in the Zoning Ordinance for the City of East Providence (the Ordinance). Id. at 21.
At some point prior to the current controversy, a building permit was issued allowing the addition of a second story to the building. Id. at 34. After construction had commenced, a cease and desist order was issued.[3] Id. Thereafter, on September 28, 2004, Mr. Zollo submitted an application for a dimensional variance seeking to convert the property into a permitted two-family residence. Dimensional VarianceApplication. To accomplish his proposal, he requested permission to add a second story to the building. Id. The application sought relief from the Ordinance's rear-yard setback due to the building's existing location near the rear of the property.Attached Sheet to Variance Application. The Application also sought relief from the Ordinance's side-yard setbacks so that two decks could be built as "the primary means of ingress and egress." Id. It further sought relief from the Ordinance's landscaping requirements. Id.
On January 5, 2005, a duly noticed hearing was conducted by the Board.[4] At the beginning of the hearing, counsel for Applicants Brian and Heather Coogan (the Applicants) informed the Board that his clients no longer wished to build the two proposed decks; thus, they were withdrawing their request for relief from the side-yard setbacks. Tr. at 9. In addition, he indicated that the Applicants "are planning on complying with the sections of the ordinance, as it relates to landscaping . . . so, other than the dimensional relief for the rear lot line, the Applicant[s] and owner[s] plan on complying with all other terms and conditions of the zoning ordinance." Id. Thereafter, the Board voted to permit counsel for the Applicants to submit an amended plan as an exhibit. Id. at 20.
At the hearing, Mr. Coogan testified that he intended to landscape the property and that it would not be used for anything other than the proposed two-family use. Id. at 32. He further testified that "[i]f I can't make [the property] two family, I have no choice but to go back the old way." Id. at 42. Mr. Coogan stated that according to his understanding, in order to fully comply with the Ordinance he would have to tear down the garage and build a residence in the center of the property. Id.
at 17-18. He further testified that such an action would be inconvenient and would cause a financial hardship. Id. at 18
Thereafter, twelve neighbors testified in favor of the Application. Id. at 51-60. The general consensus among these witnesses was that replacement of the existing use with a two-family residence would improve the neighborhood and increase property values. Id. Michael Mullin testified that "[t]here was noise at night." Id. at 52; Arthur Silva testified that the property had been in "disrepair" for almost forty years. Id. at 53; Damon Bradley testified that "[i]t doesn't take a rocket scientist to say that the building needs uplifting." Id.; Robert Mansour testified that the property "has been an eyesore and probably a major, major hazardous situation" and that it was "an accident waiting to happen." Id. at 54-55; Adrienne Deldado testified that "it's a good opportunity for it to be something positive and not just an eyesore." Id. at 56-57; Michael Miller testified that the building, particularly the roof, is "in bad shape . . . unsafe." Id. at 57; Carlo Portrenti testified that he believed that cleaning out the property "would be better for all the neighbors." Id. at 58.
Testifying against the Application were the Appellant, John Medina, and his son and Seekonk resident, Michael Medina. Michael Medina testified that if granted, the variance would affect his father 100 percent, and that should there be a fire, people would have to trespass on his father's property. Id. at 61 and 63. He also noted that the garage is so close that it overhangs his father's property. Id. at 63-64.
After hearing all of the testimony and reviewing all of the evidence, the Board agreed to grant the Application by a vote of four to one. Id. at 75-78. The Appellants then timely filed the instant appeal.
 Standard of Review
The Superior Court's review of a zoning board decision is governed by § 45-24-69(d). Section § 45-24-69(d) provides:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, ordinance or planning board regulations provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board, the trial justice "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings."DeStefano v. Zoning Bd. of Review of Warwick, 122 R.I. 241,245, 405 A.2d 1167, 1170 (1979). The term "substantial evidence" has been defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance."Lischio v. Zoning Bd. of Review of North Kingstown,818 A.2d 685, 690 n. 5 (R.I. 2003) (quoting Caswell v. George ShermanSand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981)).
In conducting its review, the trial justice "may `not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact.'" Curran v.Church Community Housing Corp., 672 A.2d 453, 454 (R.I. 1996) (quoting G.L. 1956 § 45-24-69(d)). The deference given to a zoning decision is due, in part, to the fact "that a zoning board of review is presumed to have knowledge concerning those matters which are related to an effective administration of the zoning ordinance." Monforte v. Zoning Bd. of Review of EastProvidence, 93 R.I. 447, 449, 176 A.2d 726, 728 (1962).
 The Contentions of the Parties
The Appellants assert that the Applicants failed to present any evidence that the hardship they might suffer as a result of a denial of the Application would amount to more than a mere inconvenience. They further maintain that the Board's decision was not supported by substantial evidence in the record.
In response, the Applicants challenge the appeal by raising three issues. First, they contend that they should not have been required to obtain zoning relief in the first instance because the proposal merely was to convert the existing legal nonconforming use into a permitted use without any expansion of the original footprint. Second, they maintain that the Board's decision to grant the variance was supported by substantial evidence in the record. Finally, they assert that the appeal should be dismissed for failure to serve process on the Board by and through its individual members. This Court first will address the issue of service of process.
A. Service of Process to the Board
The Applicants contend that this Court does not have jurisdiction over the Board because the Appellants failed to serve notice on either the Board or its members. They assert that while the Appellants properly named the Board and its members as parties to this appeal in accordance with § 45-24-69, the appeal should be dismissed for failure to serve these indispensable parties. In support of this assertion, the Applicants submitted an affidavit from Assistant City Solicitor Gregory S. Dias.
In his affidavit, Attorney Dias opined that that "the only individuals who may accept service of process on behalf of the East Providence Zoning Board of Review are the individual members of the Zoning Board or a City Solicitor with permission of the individual member." Applicants' Memorandum in Opposition to theAppeal, Exhibit C at 1. Attorney Dias then stated that to his knowledge, no service of process ever was made on the aforementioned individuals and that, as a result, the City did not intend to answer the complaint. Id. at 1-2.
In response, the Appellants maintain that the Applicants' assertion is misleading. They state that the City's Zoning Officer, Edward Pimental, and his secretary, Anita L. Lopes, both told counsel for the Appellants that the Zoning Office would accept service of process. The Appellants maintain that based upon these representations, they sent a constable to the East Providence City Hall and served the summons and complaint upon Ms. Lopes, who duly accepted the papers. Thereafter, Ms. Lopes filed in this Court a copy of the certified record on behalf of the City.
Before addressing the actual service of process that occurred in this case, it should be noted that
 "an official capacity suit is tantamount to a suit against the organization to which the individual defendant belongs. In other words, in an official capacity suit, the real party in interest is the organization . . . rather than the individual. Service on the official defendant is therefore unnecessary to give effective service." Mary M. v. North Lawrence Community Sch. Corp., 951 F.Supp. 820, 830-31 (S.D. Ind. 1997) (internal citations omitted) rev'd on other grounds, 131 F.3d 1220 (7th Cir. 1997).
This means that the Appellants were not required serve the individual Board members; instead, they only were required to serve the Board. Consequently, this Court need only address whether the Board itself was served with notice of the complaint. Bearing in mind that "[t]he interpretation of court rules is a question of law[,]" this Court now must determine how the Superior Court Rules of Civil Procedure apply to the facts of this case, which is an administrative proceeding. Gucfa v.King, 865 A.2d 328, 331 (R.I. 2005); see also Carbone v.Planning Bd. of Appeal of Town of South Kingstown, 702 A.2d 386,388 (R.I. 1997) ("An appeal from a zoning board or other similar agency while not a civil action is a civil procedure as contemplated in Rule 1 of the Superior Court Rules of Civil Procedure, subject to Rule 80 which deals with review of administrative agency decisions and orders").
Sections 45-24-69 and 45-24-69.1 govern appeals from a zoning board to the Superior Court. Section 45-24-69(a) provides in pertinent part:
 "An aggrieved party may appeal a decision of the zoning board of review to the superior court. . . . The zoning board of review shall file the original documents acted upon by it and constituting the record of the case appealed from, or certified copies, together with other facts that may be pertinent, with the clerk of the court within thirty (30) days after being served with a copy of the complaint. When the complaint is filed by someone other than the original applicant or appellant, the original applicant or appellant and the members of the zoning board are made parties to the proceedings." (Emphasis added.)
Super. R. Civ. P. 80 provides that the Rules of Civil Procedure, "so far as they are applicable, shall govern the review proceedings." Accordingly, "those rules of civil procedure which are consistent with the nature of an appellate proceeding may be applied in furtherance of that goal." Carbone, 702 A.2d at 389.
However, while "Rule 80 is a rule of general application to administrative appeals, and affords a uniform appellate procedure to be followed by those who seek a Superior Court review of an administrative appeal[,] . . . § 45-24-69.1 applies specifically to zoning appeals." Jeff Anthony Properties v. Zoning Bd. ofReview of Town of North Providence, 853 A.2d 1226, 1230 (R.I. 2004) (internal citation and quotations omitted). Super. R. Civ. P. 80(b) provides that "[a] copy of the complaint shall be served upon the governmental agency, department, board, commission or officer . . . to be reviewed in the manner provided by Rule 5." Rule 5 requires service of the complaint to each party "in the manner provided for service of summons in Rule 4" and that "[d]elivery of a copy within this rule means: handing it to the person to be served; or leaving it at the person's office with a clerk or other person in charge thereof. . . ." Super. R. Civ. P. 5(a) and (b).[5]
Super. R. Civ. P. 4(e) provides in pertinent part:
 "The summons and complaint shall be served together. The plaintiff shall furnish the person making service with such copies as are necessary. Service shall be made as follows: . . .
 (5) Upon a public corporation, body, or authority by delivering a copy of the summons and complaint to any officer, director, or manager thereof." Super. R. Civ. P. 4(e)(5).
Thus, according to Super. R. Civ. P. 4(e)(5), service to Mr. Pimental, in his capacity as the East Providence Zoning Officer, constitutes service to the Board and its members. The issue that needs to be determined in this appeal, however, is whether service of process to Mr. Pimental's secretary constituted service of process to the Board and its members when that secretary accepted the service on Mr. Pimental's behalf.
In Plushner v. Mills, 429 A.2d 444 (R.I. 1981), the Rhode Island Supreme Court had occasion to address the issue of whether the District Court had jurisdiction over a defendant who had not been served in the manner provided by Super. R. Civ. P. 4, but did receive actual notice in a timely manner. In that case, a sheriff served the defendant's non-resident daughter at his place of residence. Id. at 445. Although she initially refused service and dropped the papers to the ground, she later forwarded the papers to the defendant's attorney within twenty-four hours of being served. Id.
The Rhode Island Supreme Court "emphasized the principle that legislative enactments relating to service of process are to be followed and construed strictly, since jurisdiction of the court over the person of the defendant is dependent upon proper service having been made." Id. at 445-56. However, looking to federal law for guidance, the Court stated that "[i]n construing Rule4(d)(1) of the Federal Rules of Civil Procedure, the courts have broadly interpreted its provisions where the defendant or defendants have received actual notice of the suit."[6]Id. at 446 (quoting Adams v. School Board of Wyoming ValleyWest Sch. Dist., 53 F.R.D. 267, 268 (1971); see also Flynnv. Al-Amir, 811 A.2d 1146, 1151-52 (R.I. 2002) (observing that "in situations such as this one in which the defendant has received actual notice of the suit, this Court has interpreted such service-of-process rules broadly — especially when the method of service is not inconsistent with the rules"). Furthermore, "federal courts have further indicated that `[t]he construction of the statutory language must be a natural rather than an artificial one * * * [and that] in the final analysis each case must turn upon its own factual situation.'" Plushner,429 A.2d at 446 (quoting Blackhawk Heating Plumbing Co. v.Turner, 50 F.R.D. 144, 145 (1970)).
It is undisputed that Ms. Lopes accepted service of the summons and complaint, and that she also signed the summons. Both the summons and complaint name the Board and its members as defendants. The summons also states: "PLEASE SERVE Ed Pimental City of E. Providence Zoning Board of Review." It is noteworthy to this Court that Mr. Pimental does not deny receiving the papers and does not deny being aware of the appeal; instead, he stated in an affidavit that "I do not recall ever having a discussion with anyone regarding accepting service of process for the Zoning Board of Review, and I do not believe that I am authorized by law to accept such service." Applicants'Memorandum in Opposition to the Appeal, Exhibit C at 1. He also stated that "Anita Lopes, my administrative secretary, has informed me that she did sign for paperwork purportedly delivered to me, but that she was never told that it was service of process on the East Providence Zoning Board of Review." Id.[7]
The Appellants contend that Mr. Pimental and Ms. Lopes agreed to accept service on behalf of the Board and that the Applicants should be estopped from now denying that service of process had occurred. Furthermore, in order to rebut the vague statements contained in Mr. Pimental's affidavit, the Appellants submitted two sworn affidavits from members of the legal firm that represents them in this appeal. In the first affidavit, Attorney Christopher DePalo stated that "Mr. Pimental unequivocally stated to me that he would accept service." Appellant's ReplyMemorandum in Support of their Appeal, Exhibit A at 1. Legal Secretary Karen Razza stated in her affidavit that she telephoned "Anita Lopes of East Providence Zoning Board to explain to her that we had to serve a complaint for an appeal. Ms. Lopes explained to me that she would accept service of the summons and complaint." Appellant's Reply Memorandum in Support of theirAppeal, Exhibit B at 1.
This Court finds that a substantial nexus existed between Ms. Lopes and Mr. Pimental, and that she can be considered an officer for purposes of Super. R. Civ. P. 4(e)(5) because "such an interpretation is allowed when defendant receives actual notice."Plushner, 429 A.2d at 446. After Ms. Lopes and Mr. Pimental advised the Appellants that they would accept service of process, the constable served Ms. Lopes in good faith and, considering the factual situation in this case, such service was proper. Seeid. That is because "it was `reasonably calculated to give [the Board] knowledge of the proceedings and an opportunity to be heard.'" Id. (quoting NLRB v. Clark, 468 F.2d 459, 464 (5th Cir. 1972)). The fact that Ms. Lopes filed the record with this Court on behalf of the Board is further evidence that the Board had actual notice of the appeal. Accordingly, the service of process was not in violation of statutory or ordinance provisions such that substantial rights of the Appellants were prejudiced by the Zoning Board's decision.
Furthermore, although Mr. Pimental maintained that he was not authorized to accept service of process, he not only failed to inform the Appellants of this belief, but he allowed Ms. Lopes to file the record of the Board's proceedings in this Court on behalf of the Board effectuating service of process by responding with the filing of the record. See § 45-24-69 (requiring zoning boards to file the appropriate record in court within thirty days of being served).
If, as the City now alleges, "the only individuals who may accept service of process on behalf of the East Providence Zoning Board of Review are the individual members of the Zoning Board or a City Solicitor with permission of the individual member[,]" then Ms. Lopes should not have accepted service of the complaint in the first instance. See Affidavit of Attorney Dias, as contained in Applicants' Memorandum in Opposition to the Appeal,Exhibit C at 1. However, because this did not occur, and because Ms. Lopes filed the record on the Board's behalf, the Appellants certainly could have been induced into believing that service of process had been achieved. See Greenwich Bay Yacht BasinAssociates v. Brown, 537 A.2d 988, 991 (R.I. 1988) (recognizing that "the doctrine of equitable estoppel . . . may be applied to a governmental authority as well as a private party when appropriate circumstances and principles of equity so require).
Additionally, although the Appellants did join the Board and its members as indispensable parties, this Court is mindful that "[w]hen faced with a claim that a litigant has failed to join an indispensable party, a trial justice, whenever possible, should avoid dismissing the complaint; but, in any event, he or she must examine the case to determine whether it can proceed to judgment without adding the party in question." Root v. Providence WaterSupply Bd., 850 A.2d 94, 100-01 (RI 2004) (citing Anderson v.Anderson, 109 R.I. 204, 215-15, 215, 283 A.2d 265, 271 (1971). Thus, even if the Board had not been served properly, in view of this Court's disposition of the appeal, any arguments that the Board might have made would have been futile. Consequently, even if there was a defect in the service of process (and there was not), this Court concludes that it can proceed to judgment in spite of any such the alleged defect and will now address the merits of the appeal. See Root, 850 A.2d at 100-01.
B. The Board's Decision
The Appellants assert that the Applicants failed to meet their burden of showing that the alleged hardship would amount to more than a mere inconvenience. The Applicants respond by asserting that their being required to destroy an existing structure only to rebuild a new structure in the middle of the property more than satisfies that burden. In light of the ultimate outcome of this appeal, these arguments need not be addressed.
The dispositive issue in the present appeal is this Court's interpretation of the East Providence Zoning Ordinance and, in particular, its interpretation of Sections 19-411 and 19-414. This Court reviews issues of statutory interpretation denovo. See Palazzolo v. State ex rel. Tavares, 746 A.2d 707,711 (R.I. 2000). It is axiomatic that "the rules of statutory interpretation apply equally to the construction of an ordinance." Mongony v. Bevilaqua, 432 A.2d 661, 663 (R.I. 1981). Where the language of a statute or ordinance "is clear on its face, then the plain meaning of the statute must be given effect and this Court should not look elsewhere to discern the legislative intent." Retirement Bd. of Employees RetirementSystem of State v. DiPrete, 845 A.2d 270, 297 (R.I. 2004) (internal quotations omitted). In situations where "a statutory provision is unambiguous, there is no room for statutory construction and [this Court] must apply the statute as written."Id. With these doctrines in mind, this Court will now address the instant appeal.
Section 19-411 of the East Providence Zoning Ordinance provides:
 "Buildings, structures or land nonconforming by use and/or nonconforming by dimension as defined in section 19-1, are incompatible with and detrimental to permitted uses in the zoning districts in which they are located, cause disruption of the comprehensive land use pattern of the city, inhibit present and future development of nearby properties and confer upon their owners and users a position of unfair advantage. It is a fundamental principle of this chapter that nonconformities may be continued but shall not be increased, except in circumstances where the findings of section 19-39 can be met, and should be eventually abolished or reduced to conformity according to the fair interests of the parties involved. It is also intended that existing nonconformities shall not cause further departures from this chapter for any properties." (Emphasis added.)
It is clear from the foregoing language that an Applicant must satisfy the requirements of Section 19-39 before he or she may increase a structure that is nonconforming by use and/or dimension.
Section 19-39 regulates the issuance of special use permits and the findings that are required for obtaining such permits. It provides:
 "a) In granting a special use permit, the zoning board of review shall require that evidence to the satisfaction of the following standards be entered into the record of the proceedings. The special use permit shall:
 (1) Be compatible with neighboring land uses;
 (2) Not create a nuisance in the neighborhood;
 (3) Not hinder the future development of the city;
 (4) Conform to all applicable sections of this chapter; and
 (5) Be in conformance with the purposes and intent of the city comprehensive plan and applicable standards of this chapter.
 (b) In granting a special use permit, the zoning board of review may apply such special conditions as provided for in section 19-13."
In its decision, the Board made findings consistent with the requirements for a dimensional variance, not a special use permit. In view of the plain meaning of Section 19-411 requiring special use permits for the expansion of structures that are nonconforming by dimension, the Board acted in excess of its authority in granting a dimensional variance to the Applicants.
In reversing the Board's decision, this Court observes that the Applicants have argued that since they intend to abandon the legal nonconforming use of the property, and since they do not intend the expansion to go outside the structure's footprint, they automatically are entitled to add the proposed second-story. They cite to Section 19-414 of the Ordinance and to Mr. Pimental's affidavit in support of this assertion:
 "Based on his declared intent to abandon the commercial use of the above-referenced property, if Mr. Coogan were to present a request for a zoning certificate to me concerning this property and confirmed his abandonment in writing, I would issue a zoning certificate indicating that his proposed residential use conforms with the requirements of East Providence Zoning Ordinance and, even though the structure is still nonconforming by dimension, under section 19-114 of the Zoning Ordinance, he does not need to obtain dimensional relief from the Zoning Board since his proposed residential structure seeks only to add a second story and does not project beyond the existing structure. In addition I would not object to the immediate issuance of a building permit to Mr. Coogan based on these facts." Applicants' Memorandum in Opposition to the Appeal, Exhibit B at 2.
Section 19-414 of the Ordinance provides in pertinent part:
 "No addition, enlargement or expansion to a structure or building nonconforming by dimension shall be made except in conformance with the provisions of this chapter or unless a special use permit is authorized in with the provisions of this chapter. This shall not apply to the conversion of an accessory porch to living space or to second story additions, providing that there is no projection beyond the existing structure."[8]
The Applicants are seeking to convert their legally nonconforming use into a conforming two-story residential property. Pursuant to Section 19-414 of the Ordinance, the Appellants would be permitted by right to make such a conversion provided that they abandon their legally nonconforming use, and do not allow the second-story addition to project outside existing structure. It is not clear from the record, however, that there will be no such projection.
During the hearing, the following colloquy took place between a Board member and Mr. Coogan:
 MR. PERRY: Yes Mr. Chairman. I have one question. I notice you are not going to put the outside stairs going up to the units any more?"
 THE WITNESS: Yes, the stairs I will.
 MR. PERRY: The stairs will be on the outside?
 THE WITNESS: No decks.
 MR. PERRY: No decks? Just the stairs —
 THE WITNESS: Yes." Tr. at 29.
If the proposed outside stairways will project beyond the existing structure, then the Applicants would have to seek a special use permit accordance with Sections 19-414 and 19-411 of the Ordinance before they may carry out their proposed construction. Accordingly, the matter is remanded to the Board for a determination as to whether said stairs will project beyond the existing structure.
 Conclusion
After a review of the entire record, this Court finds that the Appellants sufficiently served the Zoning Board and its members and they are properly before this Court. This Court further finds that the Zoning Board's granting of the dimensional variance was in violation of statutory and ordinance provisions, was in excess of the authority granted to the zoning board, and was arbitrary and capricious. Accordingly, this Court reverses the Zoning Board's decision with respect to the granting of a dimensional variance, and it remands the case to the Zoning Board for further proceedings consistent with this Decision. This Court will retain jurisdiction over the matter.
Counsel shall submit an appropriate order consistent with this opinion.
[1] At the time that he submitted the Application, Mr. Zollo, the Industrial National Bank of Providence, and E.V. Henrikson owned the property; however, ownership of the property changed before the hearing. It is now owned by Brian and Heather Coogan (the Applicants). Mr. Coogan appeared at the hearing, and the Applicants have submitted a memorandum in opposition to this appeal.
[2] At the hearing, counsel for the Applicants stated that he believed the lots had merged by operation of law, and he agreed that they should be treated as one lot for the record.
[3] The facts surrounding the issuance and later rescission of the building permit are somewhat murky.
[4] The record reveals that this was the second hearing on the Application; however, because the first hearing was not properly noticed, the Board treated it as a new application. Tr. at 2-3.
[5] Although Rule 4 is silent about service to a clerk or person in charge at a person's office, Rule 5, which specifically is relevant to administrative appeals, does make such provision. If the manner of delivery as provided by Rule 5 applies to service of process in administrative appeals, then service to Ms. Lopes would have been proper in the first instance.
[6] In a footnote, the Supreme Court stated that "District Court Rule of Civil Procedure 4(d)(1) and Superior Court Rule of Civil Procedure 4(d)(1) contain the same language. Both rules were based on Federal Rule of Civil Procedure 4(d)(1)." Plushnerv. Mills, 429 A.2d 444, 445 (R.I. 1981). At the time, Rule4(d)(1) Federal Rule of Civil Procedure governed personal service. The language contained in the current Super. R. Civ. P. 4(e)(1) is almost identical to the language discussed inPlushner.
[7] Conspicuously absent from the record is an affidavit from Ms. Lopes as to her recollection of the events.
[8] The language "No addition . . . nonconforming by dimension shall be made shall be made except in conformance with the provisions of this chapter or unless a special use permit is authorized in with the provisions of chapter" appears to suggest that one can expand a structure that is nonconforming by dimension through means other than by obtaining a special use permit; however, in light of the fact that Section 19-411 requires a special use permit, any other means automatically would not be "in conformance with the provisions of this chapter[.]" Section 19-414 of the Ordinance. Any other interpretation would lead to an absurd result. See Kaya v.Partington, 681 A.2d 256, 261 (R.I. 1996) (stating that "[t]his Court will not construe a statute to reach an absurd result.").