# United States Court of Appeals
## For the First Circuit

No. 05-1484

KATHARINE UMSTED; ALEXANDRA STODGHILL; TRUXTON UMSTED,

Plaintiffs, Appellants,

v.

LINDA J. UMSTED, in her capacity as Co-Executor of the
Estate of Scott Umsted, Jr., and as Trustee of the
Scott Umsted, Jr. Family Trust, and as Trustee of the
Scott Umsted, Jr. Marital Trust; QUENTIN ANTHONY, in his
capacity as Co-Executor of the Estate of Scott Umsted, Jr., and
as Trustee of the Scott Umsted, Jr. Family Trust, and as Trustee
of the Scott Umsted, Jr. Marital Trust,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND
[Hon. William E. Smith, U.S. District Judge]

Before
Lynch, Circuit Judge,
Bowman,[*] Senior Circuit Judge,
and Howard, Circuit Judge.

Bernard A. Jackvony, with whom Richard J. Welch and Moses
Afonso Jackvony, Ltd., were on brief, for appellants.
Quentin Anthony for appellees.

April 14, 2006

_____

[*]Of the United States Court of Appeals for the Eighth
Circuit, sitting by designation.

**HOWARD**, <u>Circuit Judge</u>.   Plaintiffs Katherine Umsted, Alexandra Stodghill and Truxton Umsted, Jr. (collectively, "the grandchildren"), brought an action claiming that their late uncle Scott Umsted, Jr. had tortiously interfered with their expectancy in an inheritance.  The district granted summary judgment to the defendants, the co-executors of the uncle's estate.  We affirm.

**I.**

Scott Umsted, Sr. and his wife Margaret Umsted had two children, Scott Jr. and Truxton Umsted.  Truxton, who predeceased his parents, had three children, Katherine, Alexandra and Truxton Jr.  After Scott Sr. died in 1979, Scott Jr. served as the executor of his father's estate and as trustee of his trusts.  Prior to 1983, Margaret owned certain ocean-front property in Rhode Island.  The grandchildren allege that Margaret had intended to leave half of her interest in that property to them, and the other half to Scott Jr.  Indeed, under Margaret's will, the residuary of her estate is divided into two equal shares: one-half to the three grandchildren, and one-half to Scott Jr.  It is undisputed that the ocean-front property would have passed through the residuary clause had Margaret still owned the property at the time of her death.

But, in 1983, Margaret conveyed all of her interest in the ocean-front property to herself and Scott Jr. as joint tenants. According to the grandchildren, following Scott Sr.'s death, Margaret depended heavily on Scott Jr. for advice and direction

-2-

and, given his role as the trustee and executor of his father's will, his relationship with Margaret was not only that of a son, but also of a fiduciary. The grandchildren allege that Scott Jr. used his position of trust to unduly influence his mother, tortiously inducing her to make the inter vivos conveyance of the ocean-front property and depleting the size of her estate.

Scott Jr. obtained sole ownership of the ocean-front property upon Margaret's death in March 1999 and served as the executor of her estate until his death in October 2000. Although the grandchildren first learned of the 1983 conveyance in June or July 1999, they did not suggest that the ocean-front property be brought back into Margaret's estate until after Scott Jr. died and Attorney Richard Boren was appointed administrator of Margaret's estate in April 2001. Even then, the grandchildren did not make a formal written request. Boren took no action to reacquire the property.

Defendants Quentin Anthony and Linda Umsted, Scott Jr.'s widow, were appointed co-executors of Scott Jr.'s estate in October 2000. Although they were aware that the grandchildren had concerns about the manner in which Scott Jr. had performed his duties as the executor of Scott Sr.'s and Margaret's estates, it is undisputed that they did not notify the grandchildren of the commencement of the administration of Scott Jr.'s estate, as required by Rhode Island law. See R.I. Gen. Laws § 33-11-5.1. In April 2002,

-3-

pursuant to the terms of Scott Jr.'s will, the defendants conveyed Scott Jr.'s interest in the ocean-front property to themselves as trustees of the Scott Umsted Jr. Family Trust and the Scott Umsted Jr. Marital Trust.

On June 3, 2003, the grandchildren filed a complaint in federal court seeking to have title to the ocean-front property placed into a constructive trust for their benefit, and to receive money damages and attorney's fees. The first count of the complaint alleged that Scott Jr. had tortiously interfered with their expectancy of inheritance, and the second count alleged that Scott Jr. had exercised undue influence over Margaret, which resulted in the 1983 conveyance that caused them injury by depleting their inheritance.

The defendants' subsequent motion for summary judgment was referred to a magistrate judge. In his report and recommendation, the magistrate judge noted the lack of case law in Rhode Island explicitly considering the validity of a cause of action for tortious interference with an expectancy of inheritance, and concluded that Rhode Island would not recognize the tort in the circumstances of this case.[1] As to the second count, the magistrate judge determined that the claim of undue influence

_____

[1]The magistrate judge stated that it did not certify the question to the Rhode Island Supreme Court because it was "reasonably clear" that Rhode Island would not recognize this cause of action in the circumstances of this case. Bi-Rite Enters. v. Bruce Miner Co., 757 F.2d 440, 443 n.22 (1st Cir. 1985).

-4-

belonged to Margaret, the victim of the alleged undue influence, and the grandchildren could not bring a claim on behalf of her estate because the applicable statute of limitations had expired. The district court accepted and adopted the magistrate judge's findings and recommendation that the action be dismissed. The grandchildren filed a timely appeal from the judgment.

## II.

We review the district court's grant of summary judgment de novo, evaluating the record in the light most hospitable to the grandchildren. Palmieri v. Nynex Long Distance Co., 2006 WL 268778, --- F.3d --- (1st Cir. 2006). We may affirm on any basis manifest in the record. Uncle Henry's Inc. v. Plaut Consulting Co., 399 F.3d 33, 41 (1st Cir. 2005). As jurisdiction is premised on diversity of citizenship, see 28 U.S.C. § 1332, we apply Rhode Island's substantive law. See Reicher v. Berkshire Life Ins. Co. of Am., 360 F.3d 1, 4 (1st Cir. 2004).[2]

_____

[2]There lurks an important underlying issue involving the "probate exception" to federal subject matter jurisdiction. Although jurisdiction was apparently assumed by the parties and the court below, it is at least arguable that the "probate exception" negates federal jurisdiction here. See Markham v. Allen, 326 U.S. 490, 494 (1946) (holding that the federal courts have no jurisdiction to "interfere with" "probate proceedings"); Mangieri v. Mangieri, 226 F.3d 1, 2 (1st Cir. 2000) (recognizing that federal courts generally view the probate exception "as extending to all suits 'ancillary' to the probate of a will") (quotations and citations omitted). But stating the probate exception has proven easier than applying it. See, e.g., Dragan v. Miller, 679 F.2d 712, 713 (7th Cir. 1982) (Posner, J.) ("The probate exception is one of the most mysterious and esoteric branches of the law of federal jurisdiction."). Although some clarity may be forthcoming

The grandchildren's primary argument on appeal is that the conclusion that Rhode Island would not recognize a cause of action for tortious interference with an expectancy of inheritance was erroneous. They point out that Rhode Island already recognizes an analogous cause of action for tortious interference with a prospective business relationship, see Mesolella v. Providence, 508 A.2d 661, 669 (R.I. 1986), and that the Rhode Island Supreme Court has previously extended well-recognized common law theories into new contexts, see Mallette v. Children's Friend and Serv., 661 A.2d 67, 71-72 (R.I. 1995) (recognizing the tort of negligent misrepresentation in the adoption context). Given that at least 23 states have recognized some form of the tort, see Diane J. Klein, A Disappointed Yankee in Connecticut (or Nearby) Probate Court: Tortious Interference With Expectation of Inheritance--A Survey With Analysis of State Approaches in the First, Second, and Third Circuits, 66 U. Pitt. L. Rev. 235, 240 n.10 (2004), including Maine, see Cyr v. Cote, 396 A.2d 1013, 1018 (Me. 1979), and Massachusetts, see Lewis v. Corbin, 81 N.E. 248, 250 (Mass. 1907),

_____

shortly -- the Supreme Court is currently considering the scope of the probate exception, see Marshall v. Marshall, 126 S. Ct. 35 (2005) (granting certiorari), -- we bypass the issue here and assume, arguendo, subject matter jurisdiction under 28 U.S.C. § 1332 because the merits of this appeal are easily resolved against the party relying on our jurisdiction. Cf. Restoration Pres. Masonry, Inc. v. Grove European, Ltd., 325 F.3d 54, 59-60 (1st Cir. 2003) (permitting the assumption of hypothetical jurisdiction where the bypassed jurisdictional question does not go to the court's Article III power, but concerns only statutory jurisdiction).

the grandchildren argue that the Supreme Court of Rhode Island would likely follow suit. They further assert that the tort would be governed by Rhode Island's catch-all ten-year limitations statute. See R.I. Gen. Laws § 9-1-13.

Whatever force this argument may have in the abstract, it does not help the plaintiffs in this case. The magistrate judge's report and recommendation does not hold that Rhode Island would reject recognition of the tort in all instances. Rather, the magistrate judge concluded that Rhode Island would decline to recognize the tort in the circumstances presented here because the Rhode Island Probate Code provided the grandchildren with an adequate remedy that they failed to pursue before bringing their tort action. This reasoning accords with that of the majority of states that have considered tortious interference causes of action. See, e.g., Moore v. Graybeal, 843 F.2d 706, 711 (3d Cir. 1988) (applying Delaware law and holding that where "adequate relief [is] available in a statutory proceeding, a tortious interference claim may not be pursued"); Jackson v. Kelly, 44 S.W.3d 328, 332 (Ark. 2001) (same); Wilson v. Fritschy, 55 P.3d 997, 1001-02 (N.M. Ct. App. 2002) (same); DeWitt v. Duce, 408 So.2d 216, 218 (Fla. 1981) (holding that a plaintiff must exhaust probate remedies before pursuing a claim for tortious interference); James A. Fassold, Tortious Interference With Expectancy of Inheritance: New Tort, New Traps, 36 Ariz. Att'y 26, 28-29 & n.24 (Jan. 2000) (collecting

cases); cf. Root v. Providence Water Supply Bd., 850 A.2d 94, 102-03 (R.I. 2004) (holding that a plaintiff alleging a taking in violation of the state constitution must first pursue the statutorily specified remedy).

In many of these cases, the adequate remedy available to the plaintiff was a will contest in probate court. A will contest would not have provided an adequate remedy here because the grandchildren do not dispute Margaret's will, but rather the inter vivos conveyance that depleted her estate. See Hegarty v. Hegarty, 52 F. Supp. 296, 297-98 (D. Mass. 1943). Nevertheless, the Rhode Island Probate Code provides another avenue to remedy the wrong alleged by the grandchildren. Under Rhode Island law, legally interested parties may commence an action on behalf of an estate to recover property that belongs to the estate if the executor fails to so act. See R.I. Gen. Laws § 33-18-17. The rationales supporting probate exhaustion are therefore just as applicable here as in the above-cited cases.

Rhode Island, like most states, is not inclined to extend common law remedies into areas covered by statutory law. Cf. Root, 850 A.2d at 103 ("[W]hen the General Assembly creates a new statutory right or liability . . . and provides for a specific remedy for any violations of that right, a party aggrieved by the exercise of that newly created right is bound to follow the statutorily specified remedy.") (citing Smith v. Tripp, 14 R.I.

-8-

112, 114-15 (1883)).[3]  Rhode Island has enacted a comprehensive statutory scheme designed to secure the expeditious and conclusive settlement of estates and quieting of titles.  See Lind v. McSoley, 419 A.2d 247, 249 (R.I. 1980); Thompson v. Hoxsie, 55 A. 930, 931 (R.I. 1903).  Allowing a freestanding common law tort to be brought by expectant legatees on their own behalf could unnecessarily interfere with this scheme by creating the possibility of conflicting judgments and by extending the time during which an action could be brought challenging the disposition of a deceased's estate.[4]  See Graham v. Manche, 974 S.W.2d 580, 583 (Mo. Ct. App. 1998) (exhausting probate remedies reconciles the competing interests of compensating injured parties with preserving the goals of the probate scheme).

---

[3]The grandchildren's reliance on Mallette is unavailing. There was no argument in that case that a statutory remedy existed for adoptive parents claiming that an adoption agency had negligently misrepresented the health of an adopted child.  To the contrary, the Mallette court noted that "the Legislature remains conspicuously absent in this area."  661 A.2d at 73.

[4]If the grandchildren are correct that Rhode Island's catch-all ten-year statute of limitations would govern the tort, see R.I. Gen. Laws § 9-1-13, it would create an anomalous loophole to Rhode Island's statute of repose, which is designed to extinguish all actions for or against a deceased person within three years of death, see R.I. Gen. Laws § 9-1-21.  A statute of repose, contrary to a statute of limitations, terminates an action after a specific period of time not related to the injury or cause of action.  Theta Props. v. Ronci Realty Co., 814 A.2d 907, 913 (R.I. 2003). Allowing the tort in these circumstances would unnecessarily frustrate the Probate Code's goal of attaining the "speedy . . . repose of titles derived under persons who are dead."  Hoxsie, 55 A. at 931.

This view is not novel. Massachusetts, which recognizes tortious interference with an expectancy of inheritance, but also has a statutory scheme that similarly anticipates the potential for wrongfully induced inter vivos conveyances, endorses the exhaustion requirement that we adopt here. See Labonte v. Giordano, 687 N.E.2d 1253, 1256 (Mass. 1997). In Labonte, a daughter alleged that her brother had tortiously induced their mother to transfer title of her house to him. In upholding the superior court's dismissal, the Supreme Judicial Court acknowledged that a will contest in probate court would not have provided adequate relief because the house had been transferred out of the mother's estate. Id. Nevertheless, Massachusetts probate law provided other remedies that could have adequately vindicated the daughter's interests. Id. After her mother's death, the daughter could have requested the executor of the estate to sue her brother. Id. (citing Mass. Gen. Laws ch. 230, § 1). If the executor refused, the daughter would have had standing to sue on behalf of the estate. Id. (citing Mass. Gen. Laws ch. 230, § 5). Given the adequacy of these statutory procedures, the SJC declined to expand the scope of the tort. Id.

We find that Rhode Island would adopt the majority position that a cause of action for tortious interference with an expectancy of inheritance, if it lies at all, would not lie where an adequate statutory remedy is available but has not been pursued.

The question remains, then, whether the Probate Code offered the grandchildren an adequate remedy. The grandchildren contend that it did not. They argue that Rhode Island's probate courts have limited jurisdiction, and, with a couple of exceptions not relevant, lack the power to order the equitable relief sought here. See R.I. Gen. Laws §§ 8-9-9 (providing for the limited jurisdiction of the probate courts); 8-2-13 (providing that the superior court has "exclusive original jurisdiction of suits and proceedings of an equitable character and of statutory proceedings following the course of equity," with the exception that the probate courts have concurrent jurisdiction to appoint or remove trustees and to effect certain limited tax and estate planning). Because the probate courts lack equity jurisdiction, the grandchildren contend, they are unable to remedy the alleged wrong by creating a constructive trust for the ocean-front property.

We begin with the text of the statute. Rhode Island's Probate Code contains the following provision:

> If an administrator, executor, or guardian shall be requested by any person legally interested in the estate of a deceased person, . . . to commence an action or proceeding to recover any property, personal or real, which the legally interested person may have reason to believe should be recovered for the benefit of the estate, and if the administrator, executor, or guardian shall, for fifteen (15) days after written notice so to do, . . . refuse, neglect or for any reason be incompetent, to commence the action or proceeding, the legally interested person may institute proceedings in the name of the

> estate of the deceased person . . . in the
> same manner and to the same extent as the
> administrator, executor, or guardian may do in
> the case of personal property, and in the case
> of real estate in the same manner as a
> guardian, devisee, or heir at law may do, to
> recover the property.

R.I. Gen. Laws § 33-18-17.

This provision creates an express right for "any person legally interested in the estate of a deceased person" to "recover any property, personal or real . . . [that] should be recovered for the benefit of the estate." Id. (emphasis added). As legatees under Margaret's will, as well as intestate heirs, see R.I. Gen. Laws § 33-1-1, the grandchildren qualify as persons "legally interested" in Margaret's estate. Pursuant to this statute, the grandchildren could have made a written request to Scott Jr. as executor or to Richard Boren as administrator of Margaret's estate, to bring an action to recover the ocean-front property. If either had refused or neglected to initiate such an action within fifteen days of receiving the written request, the grandchildren could have brought an action on behalf of the estate. If successful, the property would have been returned to the estate, where it would then have passed pursuant to the terms of Margaret's will. Such relief would have placed the grandchildren in the same position they would have been in but for the alleged tortious conduct. See DeWitt, 408 So.2d at 220 n.11 ("Adequacy [of relief] is predicated on what the probate court can give as compared to what the

-12-

plaintiff reasonably expected from the testator prior to interference.").[5]

The grandchildren's argument that the probate courts have no jurisdiction to order the relief sought is beside the point. The Rhode Island legislature has crafted a procedure in the Probate Code that remedies the type of wrong allegedly committed in this case; that the probate court cannot effectuate this remedy is of little consequence. Nothing in § 33-18-17 limits the forum within which a legally interested person may bring an action to recover real or personal property. Assuming that the grandchildren are correct, that only the superior court could grant the relief they seek, they could have brought an action to recover the ocean-front property, on behalf of Margaret's estate, in that forum.

The grandchildren failed to follow this statutory procedure. Although they claim that their attorney "suggested" to

---

[5]That the grandchildren also seek money damages and attorney's fees does not alter our analysis. As the magistrate judge noted, the request for damages appears to be pro forma. That is, although the grandchildren have repeatedly avowed that this action is not against Scott Jr. or his estate, the complaint does not explain who should pay the damages or under what legal theory. More importantly, even if the grandchildren do have a separate claim for attorney's fees and damages, the doctrines of exhaustion of statutory remedies, see Root, 850 A.2d at 102-03, and mitigation of tort damages, see Tomaino v. Concord Oil of Newport, Inc., 709 A.2d 1016, 1026 (R.I. 1998), discourage the ripening of those claims until the statutory remedy has been pursued. Also irrelevant to our analysis is the fact that the grandchildren may now be time barred from bringing the statutory action. See Moore, 843 F.2d at 711 ("A party with an exclusive statutory remedy cannot be permitted to allow her remedy to be lost and then proceed with a tort action which would be otherwise unavailable.").

Boren that he bring an action to recover the ocean-front property, they did not serve him with a written demand to that effect. Nor did they file an action under § 33-18-17 to recover the property on behalf of Margaret's estate. Rather, they attempted to circumvent Rhode Island's statutory procedure by bringing this common-law action in federal court. Because Rhode Island's statutory procedure would have provided an adequate remedy, we affirm the judgment dismissing the grandchildren's tort claim.[6]

The second count of the grandchildren's complaint -- alleging that Scott Sr. procured the 1983 conveyance through "undue influence" -- fails for the same reasons elucidated above. Changing the name of the cause of action does little to obscure the fact that the second count duplicates the first. It is the alleged tortious interference with an expected inheritance which forms the legal basis for the grandchildren's action. The alleged "undue influence" is simply the means of that interference. See Holt v. First Nat'l Bank of Mobile, 418 So.2d 77, 81 (Ala. 1982); DesMarais v. Desjardins, 664 A.2d 840, 845 (Me. 1995) ("In recognizing [this tort], we emphasize that it is one for the wrongful interference

_____

[6]That we are reticent to recognize the tort in these circumstances should not surprise the grandchildren who deliberately brought this action in federal court. See Pearson v. John Hancock Mut. Life Ins. Co., 979 F.2d 254, 259 (1st Cir. 1992) ("A litigant who seeks out a federal forum when a state-court forum is equally available to him cannot justifiably complain if the federal court manifests great caution in blazing new state-law trails.").

-14-

with an intended bequest and not an independent action for undue influence or duress.") (quoting <u>Cyr</u>, 396 A.2d at 1019 n.7); <u>see also</u> <u>Labonte</u>, 687 N.E.2d at 1255 & n.4 (a tortious interference claim requires proof of interference by "unlawful means," which include "duress, fraud, or undue influence"). A comparison of the two counts confirms this understanding: they both allege that, but for Scott Jr.'s wrongful inducement of Margaret to convey the ocean-front property, the grandchildren would have inherited an interest in it. They also seek essentially the same remedy -- compensation for their expected interest in the ocean-front property. <u>See</u> <u>DesMarais</u>, 664 A.2d at 845 (the allegations of undue influence "substantially merged with the principal claim for interference with the expectation of a legacy").

The grandchildren's claim, whether labeled as a claim for tortious interference with an expectancy or for undue influence, should have been pursued in a proceeding pursuant to R.I. Gen. Laws § 33-18-17. Because the grandchildren failed to exhaust their statutory remedies, they are barred from suing in tort.

### III.

For the foregoing reasons, we **affirm** the judgment of the district court. Costs are awarded to the defendants.