# United States Court of Appeals
## For the First Circuit

No. 21-1761

GEORGIA GLASSIE,

Plaintiff, Appellant,

v.

PAUL DOUCETTE; JOHN TAFT; and THOMAS GLASSIE,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary S. McElroy, U.S. District Judge]

---

Before

Lynch and Kayatta, Circuit Judges,
and Laplante,* District Judge.

---

Jeffrey K. Techentin, with whom Adler Pollock & Sheehan P.C. was on brief, for appellant.
Christine K. Bush, with whom Gerald J. Petros, Laurel M. Gilbert, and Hinckley Allen & Snyder LLP were on brief, for appellee Doucette.
Keith B. Kyle, Catherine A. Shaghalian, and Orson and Brusini Ltd. on brief for appellee Taft.
Harris K. Weiner on brief for appellee Glassie.

---

December 5, 2022

---

* Of the District of New Hampshire, sitting by designation.

**KAYATTA, Circuit Judge.** This case arises out of a prolonged and acrimonious family dispute over the property of the late hotelier Donelson Glassie, whose estate remains in probate in Rhode Island eleven years after his death. The question here is whether plaintiff has managed to drag the federal courts into the fray. For the following reasons, we must answer "yes."

## I.

## A.

Donelson Glassie was a successful, twice-married hotelier.[1] His first marriage produced two children, Elizabeth and Thomas Glassie.[2] His second marriage produced three more, including Georgia (the plaintiff in this case).[3] Georgia alleges that the children of the second marriage are looked down upon by the children of the first marriage, and referred to derisively as "the Jamestown clan."

Donelson executed a will in 1999, naming as executor Elizabeth's husband, Paul Doucette. Rather than allocating equal interests in Donelson's assets to each child, the will divvies up certain businesses and the estate residuum among the children of

---

[1] We draw these facts from the operative complaint and accept them as true for purposes of this appeal.

[2] We follow the parties' briefs and refer to certain parties by first names to avoid confusion. We mean no disrespect.

[3] Donelson later had another child who is not mentioned in the will.

both marriages and Donelson's former business partner, John Taft, in varying percentages. As a result, transactions that reallocate value among the Donelson businesses and the estate residuum can affect the relative value of the parties' bequests differently. According to Georgia, Doucette, with the assistance of Taft and Thomas, has exploited that reallocation potential by engaging in transactions involving the Donelson businesses and the estate that effectively transfer value from the interests held by Georgia and her siblings to the benefit of the others, namely Elizabeth, Thomas, and Taft (the so-called "favored beneficiaries").

**B.**

Georgia brought suit in the federal district court for the District of Rhode Island. Her complaint advances the following claims:

First, she alleges that Doucette, Taft, and Thomas are liable to her under the federal Racketeer Influenced and Corrupt Organizations ("RICO") laws, 18 U.S.C. § 1962. In support of that claim, she alleges that those defendants formed an enterprise that engaged in a pattern of fraudulent interstate communications in negotiating and obtaining bank loans. As an example, she points to a $50 million loan from M&T Bank to Mid-Manhattan Hotel Associates LLC, an entity wholly owned by a company in which the estate holds a 58% interest. The favored beneficiaries' interests in Mid-Manhattan are greater than Georgia's. Georgia alleges that,

- 3 -

using Doucette's power as executor, the enterprise fraudulently took out a loan on behalf of Mid-Manhattan that was guaranteed by the estate and which was used to collect interest payments from the estate. Georgia alleges that these acts essentially transferred value from the remainder of the estate -- in which Georgia has a 10% interest -- to Mid-Manhattan and, by extension, its parent company, in which Georgia has only a 4% interest (and in which defendants hold larger interests). Georgia also points to a $22 million loan from OceanFirst Bank, guaranteed by the estate, to fund Historic Inns of New York, LLC. The estate owns a controlling 61% interest in Historic Inns; favored beneficiaries own a significant portion of the remaining interest, while Georgia holds only a 2% interest. Georgia contends that to obtain both loans, the defendants lied to Georgia and to the banks.

Second, Georgia alleges that in their capacity as managing members of Historic Inns, all defendants breached fiduciary duties owed to her as a minority member of the LLC by surreptitiously entering a loan transaction that effectively transferred value away from Georgia and to the favored beneficiaries.

Third, Georgia alleges that Doucette (as executor) breached fiduciary duties owed to Georgia (as a beneficiary) by engaging in transactions designed to favor other beneficiaries to

- 4 -

her detriment and by concealing and misrepresenting facts concerning his actions as executor.

Fourth, Georgia alleges that all defendants breached the Operating Agreement for Historic Inns by causing Historic Inns to borrow money without following the proper procedures, and by amending the Operating Agreement without a meeting or consent of non-managing members.

Fifth, Georgia alleges that all defendants negligently omitted and/or misrepresented information regarding the actions they took in securing the Historic Inns loan and amending the Historic Inns Operating Agreement.

Sixth, Georgia alleges that all defendants committed fraud by failing to disclose the actions they took in securing the Historic Inns loan and amending the Historic Inns Operating Agreement.

Seventh, Georgia alleges that all defendants engaged in a civil conspiracy to unlawfully benefit themselves by taking actions that harmed Georgia's interest in the estate but increased the value of businesses in which defendants and the favored beneficiaries held a greater interest.

As relief, Georgia seeks monetary damages against Doucette, Thomas, and Taft, all in their personal capacities, plus attorneys' fees in connection with the RICO claim under 18 U.S.C. § 1964(c).

The district court dismissed all of Georgia's claims as barred by the probate exception to federal court jurisdiction. The court reasoned that determining the harm Georgia suffered from the defendants' wrongful acts would require an accounting of the estate, and that granting her relief on some of her claims would require replacing the executor.

**II.**

We first consider a question of abstention about which the parties filed supplemental briefs at our request. Under the doctrine established in Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976), a federal court may abstain in certain instances where there is a parallel state court proceeding, "based on 'considerations of wise judicial administration' that counsel against duplicative lawsuits." Jiménez v. Rodríguez-Pagán, 597 F.3d 18, 27 (1st Cir. 2010) (quoting Colorado River, 424 U.S. at 817). As mentioned, Donelson's estate remains in Newport probate court. According to the parties, Georgia and her mother filed a petition with the probate court to remove Doucette as executor based on his breach of fiduciary duty; that petition was denied by the probate court, and the denial was appealed to the Rhode Island Superior Court. The probate court also denied a petition filed by Georgia and her mother to adjudge Doucette in contempt for failing to render inventory and account, leading to another appeal to the superior

court.  The probate court also found unripe a petition Georgia filed to prohibit the disbursement of estate funds to pay Doucette and the favored beneficiaries' legal fees.  Thomas, a defendant in this case, has also filed petitions in the probate court seeking a distribution of estate assets to him.

This federal lawsuit clearly covers much ground in common with these ongoing state court proceedings.  But some duplication alone is not enough to justify a stay of this federal action; "[t]he crevice in federal jurisdiction that Colorado River carved is a narrow one," and abstention must be approached with "caution" and granted only where there is the "clearest of justifications."  Id. (internal quotations omitted).  As a threshold matter, a stay or dismissal of a federal lawsuit under Colorado River "necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case."  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 28 (1983).  For this reason, "it would be a serious abuse of discretion to grant [a] stay or dismissal at all" "[i]f there is any substantial doubt" "that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties."  Id.  In short, to create the possibility of abstention under Colorado River, the federal- and state-court cases must be "sufficiently parallel," Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 947 F.2d 529,

- 7 -

533 (1st Cir. 1992); that is, the state action must resolve all of the claims in the federal case.

Here, there is substantial doubt that the state-court actions will resolve all of Georgia's federal claims. For example, even if Georgia were to lose in state probate court on all of her claims relating to Doucette's conduct as executor, that would not dispose of her claim that some or all of the defendants breached duties owed to her as managers of Historic Inns, since that corporate governance dispute is based on her status as a member of the LLC rather than as a beneficiary of the estate. Likewise, even if Georgia prevails on all claims in the state courts, it is unlikely that any state court in so ruling will have occasion to consider whether a RICO enterprise existed, or whether the three defendants committed bank fraud as alleged in Georgia's federal RICO claim.

Indeed, not even the defendants contend that the state-court claims will resolve all the federal-court claims. Doucette argues, instead, that we should abstain because Georgia could bring her RICO claim in state court. But if that were sufficient to invoke abstention, abstention could become the rule, rather than the exception, except in actions impacting exclusive federal jurisdiction. See Jiménez, 597 F.3d at 29 ("The 'piecemeal litigation' to be avoided is something more than just the repetitive adjudication that takes place in all cases implicating

- 8 -

_Colorado River_ doctrine . . . . [O]therwise, courts could abstain in any diversity action that overlapped with a state-court action."). Taft's claim that the state-court actions "are likely to moot, or at the very least inform, Georgia's federal claims," does not convince us that a federal court would have "nothing further to do" after the state-court actions. Thomas concedes that "the preclusive effect of the final probate action cannot at this time be predicted."

In sum, we have substantial doubt that resolution of the state-court actions will provide a vehicle for the "complete" resolution of the issues between the parties. We therefore find that the case for _Colorado River_ abstention does not get to first base.[4]

### III.

We turn now to application of the probate exception to federal court jurisdiction.[5] We review a district court's dismissal for lack of subject matter jurisdiction de novo. _Murphy_

---

[4] For this reason, we have no need to consider the additional factors drawn from _Colorado River_ and its progeny, see _Jiménez_, 597 F.3d at 27-28, that are employed to identify those instances of parallel federal-state litigation in which abstention is justified.

[5] Georgia did not argue in the district court that the probate exception applies only to state law claims, so we consider that claim unpreserved in this civil action. See, e.g., _Evangelista_ v. _Sec'y of Health & Hum. Servs._, 826 F.2d 136, 144 (1st Cir. 1987).

v. United States, 45 F.3d 520, 522 (1st Cir. 1995).  In doing so, we take all well-pleaded facts as true and draw all inferences in Georgia's favor.  Id.

**A.**

The probate exception to federal jurisdiction is a judicially created doctrine.  Born of notions regarding the boundaries of jurisdiction of English chancery courts, it precludes the assertion of federal jurisdiction in certain probate matters.

In Markham v. Allen, 326 U.S. 490 (1946), the Supreme Court stated that a federal court cannot "interfere with the probate proceedings or assume general jurisdiction of the probate or control the property in the custody of the state court."  Id. at 494.  Sixty years later in Marshall v. Marshall, 547 U.S. 293 (2006), the Supreme Court revisited that formulation of the exception, deeming it to be "not a model of clear statement."  Id. at 311.  The Court reasoned that the "interference" language in Markham was "essentially a reiteration of the general principle that, when one court is exercising in rem jurisdiction over a res, a second court will not assume in rem jurisdiction over the same res."  Id.  The Marshall Court emphasized that Markham in fact "described a probate exception of distinctly limited scope."  Id. It further clarified that "the probate exception reserves to state probate courts [1] the probate or annulment of a will and [2] the

- 10 -

administration of a decedent's estate; it also [3] precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." Id. at 311-12. But the exception "does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." Id. at 312.

The Court also observed that Markham's lack of clarity had led some lower courts "to block federal jurisdiction over a range of matters well beyond probate of a will or administration of a decedent's estate." Id. at 311. As examples of matters "well beyond" the probate exception, it cited three cases -- including one from this circuit, Mangieri v. Mangieri, 226 F.3d 1, 2-3 (1st Cir. 2000) -- in which federal courts found the probate exception barred jurisdiction over breach of fiduciary duty claims against executors or trustees. 547 U.S. at 311.

Finally, in determining whether the narrowed exception applied to Marshall's case -- a tortious interference with inheritance claim -- the Court found the probate exception inapplicable. Id. at 312-14. Marshall sought an in personam judgment, and did not seek to reach a res in the custody of a state court. Id. at 312. Moreover, "no 'sound policy considerations' militate[d] in favor of extending the probate exception," since both state and federal trial courts often addressed conduct of this type and the probate court possessed no "special proficiency"

in handling these issues. Id. (quoting Ankenbrandt v. Richards, 504 U.S. 689, 703, 704 (1992)).

**B.**

**1.**

In finding the probate exception applicable to this case, the district court reasoned that any attempt to calculate damages in this action would entail "precisely the kind of valuation and accounting that is within the exclusive province of the probate court." See Glassie v. Doucette, 559 F. Supp. 3d 52, 61 (D.R.I. 2021). Reasoned the district court, "[a]n accounting runs squarely into the probate exception." Id.

How this conclusion fits within the Marshall formulation of the probate exception (which makes no mention of an accounting), the district court did not say. Defendants presume that the district court had in mind Marshall's reference to "administration of a decedent's estate." We agree. See Glassie, 559 F. Supp. 3d at 59 (noting "[t]he essence of the claim" to be, in part, "alleged mismanagement of the administration of the estate.") So the first question posed is whether the need to determine damages constitutes a form of estate administration because it entails valuing estate assets.

Doucette claims that we need not consider this question because Georgia has failed to make argument in her brief that calculating damages would not require the federal court to

administer her father's estate.  But Georgia stated multiple times in her opening brief that her claims do not seek to administer an estate, and she argued consistently both below and in this court that the relief she seeks does not run afoul of any of the three prongs of the exception specified in Marshall.  Moreover, Georgia's relatively greater focus on the third prong made sense, given the district court's discussion of the actual effect the relief she requested would have on the estate.  In short, we see no waiver; so we turn to the merits of the issue.

## 2.

While we disagree with the district court's conclusion that the probate exception applies to this case, we acknowledge the lack of helpful precedent on point and the difficulty of applying Marshall.  See Jiménez, 597 F.3d at 24 ("[S]tating the probate exception has proven easier than applying it." (quoting Umsted v. Umsted, 446 F.3d 17, 20 n.2 (1st Cir. 2006))).  The probate exception has been called "one of the most mysterious and esoteric branches of the law of federal jurisdiction."  Id. at 23 (quoting Dragan v. Miller, 679 F.2d 712, 713 (7th Cir. 1982)).  We simply see the issue differently than did the district court.  Our reasoning follows.

## a.

First, we do not agree that any potential need to value estate assets in order to calculate damages necessarily requires

an accounting, much less estate administration.  It is true that calculating damages in this civil action could well involve the jury's consideration of how much damage Georgia suffered as a result of defendants' alleged misconduct that lowered the value of her eventual inheritance.  And that calculation of damages might include considering whether and to what extent the value of the estate residuum decreased.  But such a calculation is hardly a probate accounting.  Under Rhode Island probate law, an account is given to the probate court at the end of administration of the estate, or at other times if so ordered by the probate court.  R.I. Gen. Laws § 33-14-1.  The account must include information about the estate's assets, money it has received (whether from sales or rents), losses, charges, payments, and distributions.  Id. § 33-14-2.  Specifically:

> Accounts . . . shall charge . . . the amount of the inventory, or, instead the amount of the balance of the last account rendered, as the case may be, and all income, all gains from the sale of personal property, and all other property received by [the executor or administrator], although not inventoried, and all rents and proceeds of the sale of real estate received by the executor or administrator; the accounts shall credit all charges, losses and payments, including legacies, distribution, and specific personal property delivered, and shall also show the investments of the balance of the account, if any, and changes of investments, along with such documentation verifying such investments as the court may request.

Id. The account may also include charges for funeral expenses; money reasonably spent by the executor or administrator, including attorneys' fees paid to defend the appeal of the will; and a reasonable fee for the executor or administrator. Id. §§ 33-14-6 to -8. The settlement of the account by the probate court is "final and conclusive on all parties concerned." Id. § 33-14-11. "The accepting and allowing of . . . accounts" of executors or administrators is part of the general jurisdiction of Rhode Island probate courts. Id. § 8-9-9.

Calculating damages in a civil action falls short of the foregoing. Although Georgia alleges that information regarding the estate's assets is "not currently available to" her, the district court crossed a bridge too far when it concluded that Georgia could not "attach a value to her loss without a complete accounting." Glassie, 559 F. Supp. 3d at 61. The most that can be said is that calculating damages in this civil action may intertwine with some determinations made in performing an accounting. R.I. Gen. Laws § 33-14-2 (accounting includes ascertaining losses to the estate). But as we said in Jiménez, the probate exception does not apply merely because a judgment in the federal-court action "may be intertwined with and binding on . . . state proceedings." 597 F.3d at 24 (quoting Lefkowitz v. Bank of N.Y., 528 F.3d 102, 106 (2d Cir. 2007)). Moreover, any damages calculation will not preclude the probate court from

approving a final accounting, nor will it determine the distribution Georgia will receive from the estate itself.[6]

More generally, a rule that any need to value estate assets triggers the probate exception would lead to an expansive understanding of the exception that runs against Marshall's cautionary explanation. 547 U.S. at 311-12. A simple example highlights this point. Imagine that the executor of an estate misrepresented to a bank the value of estate property put forward as collateral for a loan. Clearly an action by the bank against the executor for fraud would likely involve valuing estate property. But we doubt that many would deem the probate exception to swallow up such an action by the bank. And in this case itself, Georgia rests her RICO claim partially on allegations that the defendants procured bank loans by fraud.

Defendants rely on several out-of-circuit and district court cases finding that any claim requiring the valuation of assets requires a premature accounting and thus is barred by the probate exception. E.g., Stuart v. Hatcher, 757 F. App'x 807 (11th Cir. 2018); Junco Mulet v. Junco De La Fuente, 228 F. Supp. 2d 12 (D.P.R. 2002). These cases draw on Turton v. Turton, 644 F.2d 344

---

[6] Because an accounting would not be required in this federal lawsuit, we are likewise not concerned that the federal court would risk "improperly assum[ing] general probate jurisdiction." Lebrón-Yero v. Lebrón-Rodríguez, No. 20-1443, 2022 WL 611589, at *2 (1st Cir. Mar. 2, 2022).

(5th Cir. 1981), a pre-Marshall case where the Fifth Circuit held that the federal courts could not adjudicate the dollar value of a plaintiff's share of the estate. Id. at 347–48. The district court there had valued assets still within the estate and ordered that the plaintiff be paid a specific dollar value of those assets, and the Fifth Circuit held that the probate exception prohibited it from taking those actions. Id.

Turton has limited relevance to the problem at hand, even apart from the fact that it predates Marshall. The plaintiff in Turton sought to obtain estate assets, rather than in personam damages. The district court in Turton sought to act directly upon the estate itself, because it ordered property to be distributed to the plaintiff from the estate. 644 F.2d at 346–47. Thus, Turton was a case in which the court attempted to dispose of property in the custody of a probate court. Marshall, 547 U.S. at 311–12. Here, Georgia seeks only in personam damages to be paid by the defendants. She does not seek to act upon the estate. More generally, determining whether Georgia suffered damages due to any defendant's acts is not a matter in which a probate court has unique expertise.

In sum, we are not persuaded that calculating the damages on plaintiff's claim would constitute administration of the estate as Marshall uses that term. Nor do we see how Georgia's complaint would otherwise require the federal court to administer Donelson's

- 17 -

estate.  Doucette argues that the federal court will need to review various documents and plans before the probate court, but we do not see how simply reviewing documents regarding the estate constitutes administration of the estate.  Taft argues that Georgia's suit seeks to effectively undo specific actions taken by Doucette in administering the estate, but Georgia asks for no relief that would reverse or otherwise affect any of the transactions she discusses in her complaint.  We conclude that Georgia's lawsuit does not seek administration of Donelson's estate, and cannot be barred by the probate exception on that basis.

**b.**

Defendants alternatively rest on the fact that among the breaches of duty alleged by Georgia are breaches by Doucette as executor.  Some federal courts have concluded that the probate exception bars claims, including breach of fiduciary duty claims, based on the executor's actions regarding the estate.  See, e.g., Stuart, 757 F. App'x at 810; Carroll v. Hill, 559 F. Supp. 3d 645, 654–55 (N.D. Ohio 2021).  But, as explained above, the conclusion that claims of fiduciary breach by the executor necessarily trigger the probate exception was rejected in Marshall itself.  547 U.S. at 311.

In Marshall's wake, several of our sister circuits have found that the probate exception does not bar claims for breach of

fiduciary duty against an executor simply because the underlying conduct involves estate assets. In Lefkowitz, for example, the Second Circuit found that the probate exception did not bar claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, fraudulent concealment, and fraudulent misrepresentation which sought in personam damages, since those claims did not require the court to reach or control a res. 528 F.3d at 107-08. Similarly, in Jones v. Brennan, 465 F.3d 304 (7th Cir. 2006), the Sixth Circuit found that a breach of fiduciary duty claim against guardians and guardians ad litem who were managing estate assets would likely not be barred by the probate exception after Marshall. Id. at 307-08. The Sixth Circuit has also twice found the probate exception did not bar breach of fiduciary duty claims where the plaintiff sought in personam damages, did not seek to reach a res in the custody of a state court, and did not simply seek the equivalent value of probate distributions. Osborn v. Griffin, 865 F.3d 417, 435-37 (6th Cir. 2017); Wisecarver v. Moore, 489 F.3d 747, 750-51 (6th Cir. 2007). The Ninth Circuit, too, has found that breach of fiduciary duty claims brought under California probate law were not barred by the probate exception after Marshall. Chrictlow v. Chrictlow, 617 F. App'x 664, 665 (9th Cir. 2015).

Where fiduciary duty claims seek to reach or distribute property within the custody of a state probate court, however, the

probate exception may well apply.  Three Keys Ltd. v. SR Utility Holding Co., 540 F.3d 220, 229–30 (3d Cir. 2008).  Similarly, the exception may apply when a plaintiff seeks the restoration of money previously distributed to a testamentary trust.  Mercer v. Bank of N.Y. Mellon, N.A., 609 F. App'x 677, 679–80 (2d Cir. 2015).  Georgia, though, makes no such requests in her federal suit.  She does not ask that the court exercise in rem jurisdiction over estate property.  Nor, finally, does she challenge the will or seek to order the probate judge to do or not do anything.  See Marshall, 547 U.S. at 311–12.  So we see no basis for invoking the probate exception merely because Georgia alleges breaches of fiduciary duty by Doucette.

Doucette also argues that Georgia's RICO claim should be barred because some of the conduct she alleges involved Doucette's actions with respect to the estate.  But Georgia's RICO claim does not ask the probate court to do anything, or ask the federal court to act on estate property.  So as with the breach of fiduciary duty claim, we see no basis to apply the probate exception to the RICO claim.

**c.**

Defendants more generally complain that Georgia's foray into federal court will interfere with the probate proceedings, because many legal and factual issues are common to the two proceedings.  But this type of "interference" is present whenever

overlapping lawsuits are filed. Nor after Marshall can it support abdication of federal jurisdiction. As explained above, Marshall made clear that the "interference" language in Markham is to be necessarily read as "essentially a reiteration of the general principle that . . . a second court will not assume in rem jurisdiction over the same res." 547 U.S. at 311-12; see Mojtabai v. Mojtabai, 4 F.4th 77, 82 n.2 (1st Cir. 2021) (finding that probate exception did not apply where "relief sought would not require the court to probate or annul a will, administer a decedent's estate, or 'dispose of property that is in the custody of a state probate court'" (quoting Marshall, 547 U.S. at 312)); Jiménez, 597 F.3 at 24 (noting that Marshall limited Markham's language regarding interference); see also Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego, 865 F.3d 1237, 1252 (9th Cir. 2017) (recognizing that Marshall refined the probate exception's scope, and accepting "reformulation" of the test that did not include interference language); Lefkowitz, 528 F.3d at 106 (stating that previous test including interference language was "overly-broad and has now been superseded by Marshall's limitation of the exception").

Of course, Georgia's federal claims may raise issues in common with those before the probate court. Most likely to be among these common issues are those requiring a determination that Doucette did or did not breach fiduciary duties owed to Georgia as

a beneficiary.  It will be for the probate court to decide what effect, if any, a determination of this issue by the federal court has on the probate proceedings.[7]  The federal court may also need to consider the potentially preclusive effect of any decisions of the probate court on the federal lawsuit, including the denial of the petition to remove Doucette as executor.  As the record now stands, we see in this overlap only a need for coordination between related lawsuits, such as arises in all sorts of contexts that have nothing to do with probate proceedings.  So we place little weight on such an overlap in deciding whether the narrow probate exception should apply to bar suit altogether.

Nor are federal courts without tools to manage overlapping litigation with state probate proceedings.  They may certify questions of state law to state high courts.  They may coordinate with state courts to administer closely related cases so as to minimize duplicative discovery or proceedings.  See James G. Apple et al., Manual for Cooperation Between State and Federal Courts (1997).  They will pay close attention to the state court's construction of state law.  Kunelius v. Town of Stow, 588

_____

[7] This is similar to what happens in Rhode Island state court when a superior court of general jurisdiction makes a ruling that may overlap with a probate proceeding.  See Tyre v. Swain, 946 A.2d 1189, 1198 (R.I. 2008) ("Once the Superior Court has made a declaration under the UDJA . . . it is then within the province of the probate court to determine what effect, if any, that declaration has on the distribution of the decedent's assets under a will or other instrument.").

- 22 -

F.3d 1, 9 (1st Cir. 2009).  And plaintiffs who run to federal court may, of course, be precluded from relitigating claims or issues decided by a probate court.  E.g., Giragosian v. Ryan, 547 F.3d 59, 63 (1st Cir. 2008).

**d.**

The ongoing nature of the probate proceedings also does not by itself support an assertion of the probate exception. Marshall emphasized that the probate exception is focused largely on the effect of the federal court's actions on the res of the estate itself.  Naturally there is a greater risk that a claim will reach property in the custody of a state court when the estate is still open in that state court.  But the pendency of state court proceedings alone cannot mean that a federal court has no jurisdiction.

For the same reason, it is not dispositive that the conduct here occurred after Donelson's death.  Although Doucette points out that the allegedly tortious conduct in Marshall occurred before the decedent passed away, none of the reasoning or conclusions in Marshall pivots on this distinction.  See 547 U.S. at 312.

**e.**

Finally, Historic Inns LLC's agreement to indemnify its managers for breaches of fiduciary duty also does not render the probate exception applicable.  It is possible that a federal court

- 23 -

judgment against the defendants for breaches of duties owed as managing members of Historic Inns would trigger this requirement, thus reducing the value of Historic Inns including the 61% share owned by the estate.  But the same can be said of any claim against any entity that happens to be owned at least in part by an estate. Certainly if Doucette ran into Georgia's car, her claim against him need not be brought in state probate court merely because he was at the time of his actions acting in a capacity that might warrant indemnification by the estate.  Here too, we see no reason why Georgia cannot pursue a claim in federal court alleging breaches of defendants' duties in managing Historic Inns, with the probate court to determine the effect (if any) of a federal court ruling on such a claim.

## IV.

One could argue as a policy matter that Georgia's claims would be best left to the state courts.  However, the lines of federal jurisdiction are not so drawn.[8]  The probate exception, as the Supreme Court admonished in Marshall, is a narrow one, and federal courts must take care not to enlarge its boundaries by

---

[8]  Of course, nothing in this opinion suggests that Congress could not redraw those lines should it wish to do so.

declining to take jurisdiction over claims such as those brought in this action.

For the foregoing reasons, we <u>reverse</u> the judgment of the district court and <u>remand</u> for further proceedings.[9]

---

[9] In light of our ruling, we have no need to decide whether the probate exception can be applied to federal causes of action in federal court. <u>Compare</u> <u>Jones</u>, 465 F.3d at 306-07 (finding exception applies to federal question cases), <u>with</u> <u>In re Goerg</u>, 844 F.2d 1562, 1565 (11th Cir. 1988) (stating probate exception "has no bearing on federal question jurisdiction").